## No. 14,009.

## W. R. FARMER vs. F. F. MYLES.

### SYLLABUS.

Police Juries have no legal authority to grant a right to construct, own, and operate a line of railways over and through the public roads in the parishes. The authority conferred upon them by Section 2750 of the Revised Statutes relates to the ordinary acts of administration of roads, used for their customary purposes.

APPEAL from the Nineteenth Judicial District, Parish of Iberia.— Foster, J.

A. J. Commack, for Plaintiff, Appellant.

Walter J. Burke & Bros., and Clegg & Quintero, for Defendant, Appellee.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff, a resident of the Parish of Iberia, averred in the petition filed by him that he owned a certain tract of land on both sides of the public road leading from the town of New Iberia to Jeanerette, La., about three miles below the town of New Iberia, and that he was a property tax payer of the Parish of Iberia, State of Louisiana, and that one F. F. Myles, also a resident of the Parish of Iberia, State of Louisiana, had by ordinance of the police jury of the Parish of Iberia, obtained the right of way over the public road leading from New Iberia to Berwick, along said road, to run, operate and conduct an electric railway for the carrying of both passengers and freight, the motive power of which should be either electricity or steam, and that the police jury of the Parish of Iberia had no right or authority, under its powers, to grant or convey to any person or persons or associations of persons, or corporation, the right to operate or conduct a railway over or along said public roads which had been conveyed or dedicated to public uses for the accommodation of persons on foot or in vehicles, as was the case here.

That this road was dedicated to public use for the convenience and accommodation of all persons who wish to travel either by foot or on horse back, or by private conveyance, and that it was neither intended that a right of way should be granted along the center of this road to any private person or corporation for the purposes of conducting and carrying on a general freight and passenger traffic as the defendant in this case proposed to do under and by virtue of a resolution of the police jury of the Parish of Iberia, which pretended to grant an absolute right of way over and along this public road to the defendant F. F. Myles and his associates or assigns for the period of ninety-nine years, the entire length of said road from the town of New Iberia to the lower limits of the Parish of Iberia along the public road which follows the course of the Bayou Teche, which is a navigable stream, and that this resolution which pretended to grant the right of way to this defendant F. F. Myles, and his associates or assigns, to build and operate an electric line of railway along and over this road which belongs to the property tax payers, adjacent thereto, was an absolute nullity, and that the police jury of the Parish of Iberia had no right or authority under its powers to grant franchises or right of way over the public road to private parties or corporations for the purposes contemplated by the defendant in this suit.

That the defendant, F. F. Myles, had engaged the services of an engineer to run the lines and take the levels incident to the construction of this proposed line of railway along this road across and through petitioner's property, and that if this road was built along the public road which crosses petitioner's property it would cause petitioner to be damaged in the full sum of two thousand five hundred dollars by depriving petitioner of the free and unobstructed use of said road in the hauling and transporting of his crop along said road, as he was now privileged to do, under the vested right which he had in and to this public road.

That this land which was now used as a public road and which crosses petitioner's property, was dedicated to the public for ordinary road purposes and not for railroad purposes, and that the fee vested in the adjacent land owners, subject to the use by the public for the purposes for which it was dedicated and not for any other purpose, and that the police jury of the Parish of Iberia was absolutely without authority to grant or give a franchise to the defendant, F. F. Myles, or any other party or parties to construct, own and operate a line of

railway along and over this public road, and that the Legislature alone had the authority and right to grant such franchise, and that the franchise just granted to F. F. Myles and his associates and successors to construct, own and operate a line of railway along this public road across petitioner's property was an absolute nullity and was without force and effect.

In view of the premises, petitioner prayed that the defendant, F. F. Myles, be duly cited to appear and answer this demand, and that service hereof be made upon him, and that after all legal proceedings were had, the ordinance of the police jury of the Parish of Iberia, enacted on the — day of ——————— A. D. 1900, pretending to grant and give to the defendant, F. F. Myles, a franchise over and along the public road between the town of New Iberia and the lower limits of the Parish of Iberia, and especially across the property of petitioner, to construct, own and operate a railway to be run and operated by electricity, be decreed to be absolutely null and void and without force and effect, and that defendant, F. F. Myles, and his associates and assigns, were without any franchise along said public road and that the defendant, F. F. Myles, be enjoined and restrained and inhibited from the building, constructing and operating of said proposed line of railroad along, across and over the public road which traversed petitioner's property, and for any and all other orders necessary and proper in the premises and for costs and for general relief.

The defendant relies upon a resolution of the police jury of Iberia, of which we find in the record the following copy:

Resolution adopted at regular meeting of the police jury of the Parish of Iberia, New Iberia, La., November 2nd, 1900.

Acting upon the petition of Mr. F. F. Myles, the following resolution was adopted:

Be it resolved, That considering the proposition of F. F. Myles set forth in open session of the police jury of this day, a franchise is hereby granted to said F. F. Myles, his associates or assigns, to construct, own and operate a line of railway, of which the motive power will be electric energy or such other power as the said F. F. Myles, his associates or assigns, may elect, subject to the approval of the police jury, and said line to extend over and through the main road running along or within a few acres of the Bayou Teche, extending from the southern limits of the City of New Iberia to the town of Jeanerette.

The said franchise to be exercised along either side of said public

road as will be designated by the police jury, and the road when once laid, on either side of said road, shall be considered to have been so laid as desired by said police jury. Grantees are to maintain in good order and repair, ballasted with gravel, the rails being level with the road-bed, and in such manner as not to interfere with the drainage of the road, that portion of the road covered by the cross-ties. The drainage on that side of the road, along which the track will run, is to be maintained by the grantee, his associates or assigns, in a manner sufficient to carry off all waters gathering thereon.

This franchise is granted subject to such additional conditions as may be imposed by the police jury of St. Mary parish upon the pending application of the present grantee, his associates or assigns, for a similar franchise, provided these conditions be not detrimental to those imposed above or herein, and provided the police jury deems proper to adopt them, giving timely notice thereof.

This said franchise is granted for a term of ninety-nine (99) years. The franchise granted will become void if the *bona fide* construction of said road is not begun within twelve months from this date, and the said road completed and in operation within thirty months after the beginning of construction.

Be it further resolved, That under the same terms and conditions as above set forth, the franchise is likewise granted over and through the public road from that point at the intersection of Ann street in New Iberia, and the road running southward the west side of the Morgan's La. & T. R. R. over and alond said road and running parallel to the said railroad and down to Lewis avenue and thence along Lewis avenue to the main road above first described, the purpose being to grant a franchise along and over said road above set forth so as to perfect a belt line for local service in and about the City of New Iberia and connecting said belt line with the main line extending from New Iberia to the southern limits of the parish beyond."

It was admitted on the trial that W. R. Farmer owned a plantation situated on Bayou Teche, extending within parallel lines to the rear, to Grandmarais, and that the public highway over which the proposed railroad was to be constructed ran directly through the said plantation from the northern to the southern line. The said public road was that which followed the Bayou Teche along its course and more particularly from New Iberia to Berwick City, but it did not run immediately on the banks of said bayou, but followed it at a distance of

about four to six acres, there being no road open immediately along the bayou bank.

The defendant introduced in evidence a report of the engineers to him showing population, extent of territory, valuations and other facts.

It was admitted by plaintiff that the data set forth in the report as to the population, area, settlements, manufacturing and agricultural interests, industries and institutions, and all kindred facts and matters set forth in the report, were correct, and for the purpose of this action of plaintiffs was admitted and not contradicted.

The District Court rejected plaintiff's demand and dismissed his suit, and he appealed.

## OPINION.

This case raises an issue as to the power of police juries in respect to roads. The sections of the Revised Statutes bearing upon the subject are sections 2743 and 2750. Those sections read as follows:

Section 2743. The police juries shall have power to make all such regulations as they may deem expedient. * * *

Second. As to the proportion and direction, the making and repairing of the roads, bridges, causeways, ditches, levees and other highways. * * *

Ninth. The police juries of the several parishes of the State (the Parish of Orleans excepted) shall have the exclusive privilege of establishing *ferries* and *toll bridges* within their respective limits; of *fixing the rates of ferriage and toll* to be charged thereon, and of generally regulating the police of the same. * * *

Fifteenth. To grant permission and to determine the rate of toll to be demanded by persons desiring to *build a bridge* or make a *turnpike road; provided, that in no case whatever the police jury shall grant the right of toll for more than ten years.*

Section 2750. The police juries of all the parishes in the State are authorized to pass all such ordinances as they may deem necessary relative to *roads,* bridges and ditches, and to impose such fines and penalties and to enforce the same as they may think proper to be recovered and enforced by indictment and information in the name of the State, or by ordinary process before any court of competent jurisdiction in the name of the police jury of the parish.

The right conferred upon the defendant in this case by the police jury is "a franchise to construct, own and operate a line of railway,"

of which the motive power will be electric energy or such other power as the grantee will elect, subject to the approval of the police jury. The line is to extend over and through the main road, running along or within a few acres of the Bayou Teche, from the southern limits of the City of New Iberia to the town of Jeanerette. The grant is for ninety-nine years. The only obligation imposed upon the grantee is that "he is to maintain in good order and repair, ballasted with gravel, the rails being level with the road-bed and in such manner as not to interfere with the drainage of the road, that portion of the road covered by the cross-ties. The drainage on that side of the road along which the track will run is to be maintained in a manner sufficient to carry off all waters gathering thereon." There are no obligations, nor conditions, nor restrictions, imposed upon the grantee by the police jury as to what he will be called upon to do or what he can be forced to do should the road be built; that matter seems to be left to him unless the declaration "that the franchise is granted subject to such additional conditions as may be imposed upon the present grantee by the police jury of St. Mary Parish, upon the pending application by him for a similar franchise" may control him. What those conditions (to be imposed hereafter by a body other than itself) may or will be does not appear. Even should defined conditions be imposed and fixed by the police jury of St. Mary Parish upon the grantee, they are to be binding only in the event the police jury of Iberia thinks proper to adopt them. The ordinance reserves neither in detail, nor even in general terms, any power of control, regulation or police, over the future actions of the grantee. It is obviously the belief of both the police jury of Iberia and the grantee, that under and by virtue of the franchise, the grantee has not only been granted the right to "construct, own and operate a line of railway," but to charge toll, and this for ninety-nine years.

It will be seen that the only direct or express authority conferred upon the police jury to authorize for a limited time the exaction of toll, is the toll to be charged by "keepers of ferries or toll bridges or turnpike roads." Railroads or railways are not referred to at all. *Affirmatio unius exclusio est alterius.*

The right to charge toll upon a public highway is a franchise; it must come from the Legislature; it is not an implied power. (Lawson's Remedies and Procedure of Public Rights and Remedies, Vol. 7, p. 6276, Section 4003; Harvey vs. Peters, 19 Ann. 265.)

The right which is conferred is not permission to a person or body having an existing right to charge toll, to lay its rails and run along a particular public road of the Parish of Iberia, but it is the very right itself of "constructing, owning and operating a line of railway" (with the supposed accompanying right of charging toll) upon said road for ninety-nine years.

We do not think that under provisions of Section 2750, R. S., police juries are given the right to grant a franchise to construct, operate and own a line of railways "along a public road of a parish" for ninety-nine years. Still less are they authorized to grant a right to charge toll for that time. The operating of a line of electric cars along a public road in the country parishes where there are deep ditches on both sides of the roads, and there are very limited means for avoiding coming almost into contact with the passing cars, is attended with very serious danger, not only to the citizens of the Parish of Iberia, but to those of the other parishes who may be passing along the highway. Such use may be convenient, but it certainly detracts from the safety of country roads. A right to so use a road is one to be exercised only by direct permission, under special legal authority under proper restrictions for the public safety, as well as for the public convenience. The legal authority to do this must not be deduced from general provisions of a law; it should not be implied, but it should be conferred in express terms. We are asked in this case to place upon the indefinite action which has been taken in this particular matter by the police jury of Iberia, the seal of judicial sanction, to say that not only what has been done, but what may be done, and will be done in the premises, is legal. As matters stand, we would not be justified in doing so.

If the authority claimed by a police jury to act in respect to a particular matter had been expressly conferred upon it by the Legislature, we might not be warranted in interfering with the exercise of the power except in case of abuse, but where a case comes before this court asking its sanction to action taken by a police jury in the exercise of what would be, at most, an implied power, we cannot do so upon an ordinance so indefinite as that submitted to us in this case. The court,

before taking action, must stand upon much firmer legal ground than it does in this instance.

We presume the defendant bases the authority of the police jury of Iberia to have granted him the privilege or franchise, which it did, upon the provisions of Section 2750 of the Revised Statutes which authorize police juries "to pass all such ordinances as they may deem necessary relative to roads, bridges and ditches, and to impose such fines and penalties to enforce the same as they may think proper," and that he predicates the scope of this authority upon that which might follow from a similar general grant of power conferred upon the authorities of a city. The rights, powers, duties and liabilities of a parish and its governing officers differ materially from those of a city. It is not necessary to enter into any extended examination here of the reasons for this difference. The jurisprudence of Louisiana (as well as that of other States of the Union) has recognized that fact, and we must regard it as an accepted and established premise, in dealing with rights or privileges, asserted to have been derived from authority of a police jury. Parish vs. Gaddis, 9 Ann. 432; City vs. Kerr & Gally, 50 Ann. 413; Sherman vs. Parish of Vermilion, 51 Ann. 884; Fisher vs. Police Jury, 52 Ann. 433; Planter's Oil Co. vs. Monroe, 52 Ann. 1248.

Dillon, in his work on Municipal Corporations, Section 23, draws the distinction between municipal corporations proper, such as a city, and *quasi* corporations such as counties (parishes). He says that "counties are at most local organizations, which, for the purposes of civil administration, are invested with a few functions, characteristic of a corporate existence. They are local subdivisions of the State, created by the sovereign power of the State of its own sovereign will, without the particular solicitation, consent or concurrent action of the people who inhabit them." "Municipal organization (proper) is asked for or at least assented to by the people it embraces; the latter organization (counties) is superimposed by a sovereign and paramount authority. A county is one of the public territorial divisions of a State, created and organized for public political purposes connected with the administration of the State government, and specially charged with the superintendence and administration of the local affairs of the community, and being in its nature and objects a municipal organization, the Legislature may, unless restrained by the Constitution or some other of those fundamental maxims of right and justice with respect to

Farmer vs. Myles.

which all governments and society are supposed to be organized, exercise control over the county agencies and require such public duties and functions to be performed by them as fall within the general scope and objects of the municipal organization." *A municipal corporation proper* is created mainly for the interest, advantage and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the State at large, for the purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport and especially for the general administration of justice.

With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy.   (See Section 438 on the same subject). Referring in Section 25 (10-a) to "civil corporations," the author says "they are of different *grades or classes,* but in essence and nature they must all be regarded as public."   He refers to "school districts" and to "road districts," and says "they are but instrumentalities of the State and the State incorporates them that they may more effectually discharge their appointed duty; they are involuntary political or civil divisions of the State, created by general laws to aid in the administration of government, and so are counties.   Their powers are not uniform in all the States, but they generally relate to the administration of justice, the support of the poor, the establishment and repair of highways, all of which are matters of *State,* as distinguished from municipal concern.   They are purely auxiliaries of the State, and to the general statutes of the State they owe their creation, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe and impose all the liabilities to which they are subject.   Considered with respect to the limited number of their corporate powers, the bodies above named rank low in the grade of corporate existence, and have been frequently termed *quasi* corporations.   This designation distinguishes them on the one hand from private corporations aggregate, and on the other hand from municipal corporations proper, such as cities or towns acting under charters or incorporating statutes, and which are invested with more powers and endowed with more functions and a larger measure of corporate life."

We think a parish can be properly classed as a "body politic" with

corporate form. When cities are given existence by statute, they are created entities entirely separate and distinct from the State for many purposes and with rights, duties and liabilities separate and distinct from those of the .State, though they are frequently charged by statute with the performance of special *State duties,* but when counties are created the governing authorities remain and act throughout as "State" governmental instrumentalities or agencies. The relations between city corporations and the people therein are much more close and direct than are those between parishes and the citizens thereof. Cities generally act upon matters within their delegated powers in their own right, and not as State agencies, while the acts of the police jury are those of the State, through the police jury, acting as a governmental instrumentality. The city authorities deal generally with matters of their own with which the State has, if any, but remote concern, while police juries deal with matters in respect to which they hold no "corporate" rights, but simply administer for the State under limited powers. Parties claiming rights under such circumstances must show very clearly the holding by the public agency of the authority to confer the rights. The statutes under which authority is claimed are construed with strictness and are not extended by implication to cover matters not *generally belonging to bodies of that particular class.*

Coming now to the rights which the police jury of Iberia undertook to confer upon the defendant, Elliot, in his work on Roads and Streets (Section 397), declares that "there is an essential difference between urban and suburban servitudes; the owner of the dominant estate in an urban servitude has very much more authority and much greater rights than the owner on the dominant estate in a suburban servitude. The easement of the one is very much more comprehensive than that of the other. It is doubtful whether, of all servitudes, there is another one so broad and comprehensive as that of a city in its streets. On the other hand, the easement of the public in a suburban road is not much greater than many merely private easements, if, indeed, it is as great. City officers in charge of streets may do many things that rural highway officers have no authority to do, for the authority of one class of officers extends far beyond that of the other class. Many of the rules which apply to the one class of easement are wholly without force as against the other class.

Decisions affecting streets cannot always be considered as of force or relevancy where country ways are the subject of litigation." In Indian-

apolis vs. State, 37 Ind. 496, the court said: "Over the public high-
ways, without the limits of a city, the Legislature have retained their
authority, but within the limits of a city the Legislature have delegated
their authority to the common council of the city, and their action in
relation thereto will be of the same force and effect as the acts of the
Legislature in relation to the public highways without."

A land owner who dedicates a strip of ground for a street, sets it
apart to a very different use from that to which one devotes land
which he dedicates for a country road. The one parts with many
rights and privileges which the other retains. The owner of the fee of
a rural highway may make many uses of it which the owner of the fee
of a street in a city cannot. Private ownership in the fee of a street
does not carry any general right to use the street for private purposes
or profit, while the owner of the fee in a country road retains many
privileges and rights. These rights of the rural proprietor the local
officers can seldom take away from him. They can, it is certain, only
deprive him of them when it is necessary to make the highway safe and
convenient for travel. The standard by which the authority and the
right of the local officers in control of suburban roads are to be meas-
ured is to be fixed by law, for they have no authority to make any other
use of the way than that to which it was dedicated, or for which it was
appropriated under the right of eminent domain. In the case of a
dedication, the law enters into the act as a silent but potent factor and
fixes the respective rights of the owners of the dominant and servient
estates, and in the case of a seizure, the owner receives compensation
only to the extent to which his property is taken or injured. In neither
case, therefore, does he part with any other right than such as is
embraced within the right of the public to use the land acquired from
him for a country road." (Elliott on Roads and Streets.)

While the control of the highway officers over a rural road is by no
means so extensive as that of municipal officers over a city street, still
it is extensive enough to authorize the rural highway officers to do
lawfully whatever is necessary to be done to make a safe, convenient
*public country road,* and may use it for public purposes legitimately
connected with that particular kind of road.

Elliot says in his work on Roads and Streets (Section 420), that the
easement of the public in a rural road consists in the right to use it for
the purpose of passing and repassing; that the right of passage, as the
old books put it, is "the liberty of all citizens to pass and repass on

foot, on horseback and in carriages and wagons." The word "carriage," as here used, means obviously the carriage ordinarily employed for rural road travel and not the railway car or upon a railroad. The road can be occasionally used under peculiar care and precaution in the transfer of special objects which necessity requires should be conveyed upon them.

We are of the opinion that police juries have no authority under a grant of authority couched in such general terms as is that conferred in Section 2750 of the Revised Statutes, to authorize the constructing and operating of railroads or railways over and upon rural public roads. The grant of power for this purpose must be specific and not implied. The ordinances relative to roads which that section authorizes are those relating to the ordinary acts of administration of roads used for their customary purposes. Tilton vs. Railroad, 35 Ann. 1047.

Country roads cannot be occupied by street railway tracks without legislative sanction. In an English case, the governing officers of a parish granted the right to construct a tramway on the highway, and it was held that the grant was void, and that the tramway was a nuisance, the court declaring that such a grant could not be made without legislative authority. The authority must be granted by the Legislature directly or through the authorized action of the municipality. (Elliott, Section 739.)

It is generally conceded that country roads cannot be used for such purpose, even by legislative consent, *without compensation to the adjoining land owners.* (Elliott, Section 455.)

Any legislative permission to use public roads for such purposes would be subject to the rights of the adjoining land owners in the premises. The right could not be exercised under the permission, unless the owners should have given their voluntary consent or their forced legal consent had been obtained under expropriation proceedings. (Tilton vs. Railroad, 35 Ann. 1047.)

A land owner has the right to resist the unauthorized diversion of a country road, over his property, to any other than its usual and legitimate use. Elliot, Section 442; Dudley vs. Tilton, 14 Ann. 286; Tilton vs. New Orleans City Railroad Company, 35 Ann. 1063.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment appealed from be, and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed, that the defendant, F. F. Myles, is not authorized, under the ordinance or

resolution adopted at the meeting of the police jury of November, 1900, to construct, own and operate a line of railways as therein authorized, and he is hereby enjoined from constructing or operating said line of railway under said ordinance or resolution. The injunction to that effect, which issued herein, on plaintiff's prayer, being hereby reinstated.

MONROE, J. I concur in the decree.