4 So.2d 814

**STATE v. LASSITER.**

No. 36249.

Nov. 3, 1941.

W. T. Drew, of Minden, for relator.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., and Graydon

K. Kitchens, Dist. Atty. pro tem., of Minden, for respondents.

ODOM, Justice.

The Police Jury of Webster Parish adopted an ordinance making it unlawful and a misdemeanor to sell or "possess for sale" intoxicating liquors in those wards of that parish which had been voted dry at a local option election. The ordinance further provides that the possession "of more than one-half gallon of intoxicating liquor, or of any quantity of intoxicating liquor contained in more than two bottles or containers shall constitute prima facie evidence of possession of same for sale and of a violation of this ordinance".

The City of Minden is in Ward 4 of Webster Parish, which ward is dry territory. On December 10, 1940, charge was made by the city marshall against the defendant in the city court of Minden, setting out that on November 1, 1940, she did "unlawfully possess intoxicating liquor commonly called whiskey for sale for beverage purposes, contrary to the Police Jury Ordinance of Webster Parish, La."

Several pleadings were filed in the city court by defendant. These need not be discussed. Defendant was convicted and fined $100 and costs. She appealed to the district court, where the case was tried de novo.

Before going to trial in the district court, defendant through counsel filed a motion to quash the charge on the ground that the Police Jury of Webster Parish had not been vested with authority to enact

an ordinance making it unlawful to possess intoxicating liquors for sale, and that, in so far as the ordinance so provided, it was "ultra vires, unconstitutional, null and void".

This motion to quash was overruled, and properly so. In State v. Emerson, 197 La. 783, 2 So.2d 212, it was held that under the local option law, which is Act 17, First Extra Session of 1935, police juries were authorized to adopt such ordinances to make prohibition "effective".

The defendant then went to trial in the district court. After hearing the evidence adduced by both sides, the defendant was adjudged guilty by the district judge. The judgment of the city court and the sentence were affirmed.

After defendant was convicted in the district court, she applied to this court for writs of certiorari, mandamus, and prohibition, which we granted because it appeared from the application for the writs that the verdict of guilty rendered against her was not supported by any legal evidence.

 This court has repeatedly held that, if there is any evidence at all to support a conviction in a criminal case, the record will not be examined to ascertain whether the evidence adduced was sufficient to support the verdict of guilty. It has repeatedly held also that, while the court will not review the testimony to ascertain whether it is sufficient to support the verdict rendered, "yet it will examine the record for the purpose of ascertaining whether any testimony at all was adduced, and, in cases where it is found that, as a

matter of fact, no testimony at all was adduced against a defendant which tended to support the verdict of guilty rendered, a question of law arises which the court may decide". State v. Singley et al., 195 La. 519, 197 So. 218, 220, and the numerous cases there cited.

In defendant's application for the writs, her counsel set out in narrative form the substance of all the testimony adduced both on behalf of the State and on behalf of the defendant. Counsel stated under oath that the facts detailed were not disputed. We ordered the case up because it appeared from the application that, if the conviction were permitted to stand, there would be a miscarriage of justice. In obedience to our order, the district judge filed his return in this court. Counsel for the State also filed answers and briefs. From these answers and briefs we find that it is admitted that the statement of the facts narrated in the application for the writs is correct.

 The defendant is a married woman, and the facts are that she and her husband operate a small business in the country some four or five miles from the City of Minden. The bedroom occupied by defendant and her husband is in the building in which their business establishment is conducted. Defendant's husband left home on October 1 and remained away from home during the entire month of October. On November 1, while defendant's husband was still absent from home, the city marshall of Minden and a deputy sheriff (these officers having previously obtained a search warrant) searched defendant's premises

and found concealed in the wall of the bedroom seven half-pint bottles of whiskey. The city marshall testified that defendant told them that she did not own the whiskey but that it had been left there by her husband. He testified further that she told them that the whiskey was "theirs", meaning, as the officers and the judge understood, that it belonged to the defendant and her husband. The officer testified also that the defendant said her husband had been previously convicted for possessing intoxicating liquors for sale and that this time she "would take the rap". The city marshall was the only witness for the State.

The defendant took the stand and testified in her own behalf. No other witness testified for the defense. She said that the whiskey belonged to her husband and that she had nothing to do with it. The district judge in his return states the facts to be as follows:

"Mrs. Lassiter and her husband operate a business some five miles out of Minden. The store and living quarters are under one roof. The husband had been away working for a month at the time the liquor was found. It was found concealed in the wall of the bedroom. Her husband had been previously convicted of possession of whiskey for sale, and she told the arresting officer she 'would take the rap', presumably because the fine would not be so heavy on her for a first offense as would be the case with her husband, who would be a second offender. Anyway, the husband had been away a month and was not present when the liquor was found. She told

the officers it was 'theirs'. * * * There is not any doubt in my mind that she was in possession of it, (whoever owned it), and that she intended to sell it. If there had been any reasonable doubt about it, that doubt would have been resolved in favor of the defendant and she would have been acquitted."

During the progress of the trial, counsel for defendant asked the court to deliver to itself the following charge: "That the husband is head and master of the family [sic] and that whiskey found in the home will be presumed to be the property of the husband until proven by the State to be the property of the wife."

The judge refused to so charge and states the reason for his ruling in the following language: "The defendant in this case is not charged with the ownership of any intoxicating liquor. She is charged with possessing it for sale. The evidence disclosed that the husband was not at the place when the search was made, but was working away from home, and had not been home for some weeks, and the query was whether or not the defendant was in possession of it for sale, *and on account of the quantity on hand, I presume she had it in possession for sale.*" (Italics ours.)

It therefore clearly appears that the only evidence the judge had before him to convict the defendant of the charge of possessing liquor for sale was the fact that the liquor was found in the bedroom occupied by her during the absence of her husband. In other words, the trial judge "presumed", or drew the inference, that, "on account of

the quantity on hand", she had it in possession for sale.

Mrs. Lassiter's testimony that her husband had deposited the liquor in the wall of the bedroom and left it there is not disputed. That, in fact, seems to be conceded. Mrs. Lassiter continued to occupy the bedroom during her husband's absence. So far as the record discloses, she had merely let the liquor remain where her husband deposited and left it. There is no testimony, direct or circumstantial, to show, even to indicate, that Mrs. Lassiter had any part in the depositing of the liquor in the place where it was found or that she approved of, or acquiesced in, her husband's conduct in putting it there. All she did was to let it remain during his absence where he put it.

Now, the only evidence, the only circumstance, upon which the judge relied in this case as proof that Mrs. Lassiter was guilty of possessing this liquor for sale was the established fact that she had let it remain for a month during her husband's absence where he had put it. If it be conceded that the husband was, while at home, engaged in the liquor traffic and that he had obtained and was holding this liquor for the purpose of selling it, and if it be conceded that his wife was aware of her husband's intentions in this respect, these bare facts afford no reason for holding that the wife intended to carry on the prohibited traffic during his absence from home.

So far as we are informed by the record, there are no facts or circumstances remotely indicating that Mrs. Lassiter intended to sell this liquor, or, to put it in other words, that she possessed it for sale. The verdict of guilty rendered against her was therefore not supported by any evidence at all.

The judge says that "the query was whether or not the defendant was in possession of it for sale, and on account of the quantity on hand, I presume she had it in possession for sale".

"Presumption," says Webster, is "An inference as to the existence of one fact not certainly known, from the known existence of some other fact". Article 2284 of the Revised Civil Code says that "Presumptions are consequences which the law or the judge draws from a known fact to a fact unknown".

The known facts in this case are that seven half-pint bottles of whiskey were found in defendant's bedroom and that defendant's husband had put them there. From these known facts alone, the judge "presumed", or drew the inference, that defendant was in possession of intoxicating liquors for sale. In the absence of any other circumstances indicating that defendant possessed this liquor for sale, we think the judge erred in his conclusion.

We attach no special importance to defendant's statement that the liquor was "theirs" and that she would "take the rap". It is likely that she thought that, in as much as her husband had brought the liquor to the place and left it there, it belonged to them both. But from this it cannot be inferred, we think, that she intended to sell it. It is likely also that she thought that, merely because the liquor was found in her bedroom, she would be convicted of having

it in possession for sale. Hence her statement that she would "take the rap".

 It is probable, we think, that, in reaching the conclusion which he did, the judge was influenced, to some extent at least, by that provision of the police jury ordinance making the possession of "more than one-half gallon of intoxicating liquor, or of any quantity of intoxicating liquor contained in more than two bottles or containers" prima facie evidence of possession of such liquor for sale in violation of the ordinance. That ordinance, however, is invalid in so far as it makes the possession of liquor in certain quantities prima facie evidence of an intent to sell, because police juries are not vested with authority to prescribe rules of evidence. Police juries have no powers except those delegated to, or conferred upon, them by the Legislature, and the Legislature has not authorized them to lay down rules of evidence. In State v. Emile, 136 La. 891, 67 So. 947, it was held that police juries had no powers except those delegated to them by the State Legislature, were not vested with any general police powers, and, in the absence of special legislative authority, could not pass ordinances forbidding the keeping of intoxicating liquors for sale in prohibition territory. However, since that decision was rendered, the Legislature has delegated to police juries the power to adopt such ordinances. See State v. Emerson, 197 La. 783, 2 So.2d 212.

In City of Shreveport v. Maroun, 134 La. 490, 64 So. 388, 391, it was held that the city council of Shreveport was without authority to declare the possession of in-

toxicating liquor to be prima facie evidence of the keeping of a "blind tiger", because it was found by the court that the Legislature had not attempted to give the city council authority "to define or to make rules of evidence".

"The general power of the legislature to prescribe rules of evidence and methods of proof is undoubted". 10 R.C.L., page 863, Section 6. See "Evidence", 20 Am.Jur., page 38, Section 8. The police juries of this state have no such power. For a comprehensive discussion of the powers of police juries, see State v. Emile, supra; Farmer v. Myles, 106 La. 333, 30 So. 858, and cases there cited.

For the reasons assigned, it is ordered that the preliminary writ of prohibition heretofore granted in this case be and is hereby made peremptory, and further ordered that the judgment convicting and sentencing the defendant be quashed and set aside, and that the defendant be discharged.