77 So.2d 544

Galyn D. STONE

v.

POLICE JURY OF PARISH OF CALCASIEU.

Nos. 41940, 41941.

Dec. 13, 1954.

Rehearing Denied Jan. 10, 1955.

George W. Liskow, Lake Charles, for relator.

Griffin T. Hawkins, Dist. Atty., Fred C. Selby, Asst. Dist. Atty., Lake Charles, for respondent.

FOURNET, Chief Justice.

This matter is before us on writs of certiorari, mandamus, and prohibition with a stay order, granted upon a showing by Galyn D. Stone that if he attempted to pursue his business of operating a limousine service between the City of Lake Charles and the Lake Charles Air Base, he would be arrested for violation of Ordinance 806 of Calcasieu Parish, a warrant so charging him having issued on the day following an adverse judgment, and before he had

had an opportunity to perfect his appeal therefrom, in his suit against the defendant, Police Jury of the Parish of Calcasieu, to have the Ordinance declared unconstitutional, null and void, and to enjoin the defendant from interfering with his use of the public highway and public buildings at the Lake Charles airport in meeting scheduled commercial air line landings and in transporting passengers between the City of Lake Charles and the air line terminal.[1]

The Lake Charles Air Base, established in 1941 by the United States Air Force on property which had been turned over to the Government for that purpose by the Calcasieu Parish Police Jury, was returned to the Police Jury after the expiration of World War II; it was again taken over during the Korean conflict, but the Police Jury was allowed to retain a small portion as a civilian area (known as the Lake Charles Air Base), which is maintained by it under legislative authority[2] as a public airport. The administration or terminal building, owned and furnished by the defendant, is used by Eastern Air Lines, which maintains daily flights to Lake Charles, under a lease contract with the defendant. Hangars located on the grounds are occupied by planes of individuals or companies in the vicinity under lease from the defendant, and a small parking lot surrounding the terminal is maintained by the defendant. For some years the plaintiff has conducted the business of transporting passengers and air freight to and from the airport under the name Airline Limousine Service.

In March, 1954, the defendant issued public notice that it would receive bids for "a franchise for the exclusive rights of limousine service" and "a franchise for the exclusive service of driverless rental cars" at the airport. Several bids were filed for the limousine service,[3] including one by the plaintiff; the highest bid was, however, submitted by another, and was accepted. Thereafter, on May 4, 1954, the defendant adopted Ordinance No. 806, reading, in part: "Be it ordained by the Police Jury of Calcasieu Parish, Louisi-

---

1. Two applications for writs were made in this case; writs of certiorari and mandamus were granted to review the lower court's judgment in the plaintiff's injunction suit, and writ of prohibition with stay order was granted to stay further action based on that judgment pending disposition by this Court. These matters have been consolidated for the purposes of this decision.

2. Act 222 of 1936, as amended, LSA–R.S. 2:131 et seq.; Act 419 of 1938, LSA–R.S. 33:4622.

3. These bids were made "subject to the following conditions: 1. The limousine service shall be available at the Airport at the time of arrival of all scheduled airline flights into Lake Charles; 2. Competitive taxi service, etc., will be allowed on the premises only on special call by an individual who desires their service. 3. The Calcasieu Parish Police Jury will assume no liability for the operation, and successful bidder should carry adequate liability insurance coverage for the operation. 4. Successful bidder will be required to enter into a

ana, that immediately after the passage of this Ordinance no person, firm or corporation may solicit or sell any product, commodity or service in the civilian area of the Lake Charles Air Base including the Airport terminal and parking lot without first obtaining a contract and permit from the Calcasieu Parish Police Jury. That this includes any limousine, taxi, or you-drive-it service." The Ordinance further provided that any person found guilty of violating its provisions "shall be fined not less than one ($1.00) nor more than one hundred ($100.00) dollars, or imprisoned not less than one (1) day nor more than thirty (30) days, or both. That each solicitation or sale of any product, commodity or service shall be considered a separate offense."

Suit attacking the validity of the Ordinance was filed by the plaintiff on May 18, 1954, and a temporary restraining order issued, but following trial on the merits the restraining order was rescinded and plaintiff's demands were rejected. A motion for suspensive and devolutive appeals was granted, but before the appeals were perfected the warrant for plaintiff's arrest was issued, whereupon he applied to this Court for writs, as mentioned above.

The plaintiff contends (1) that the defendant has no power to grant such a franchise, and consequently no power to protect such a license by the passage of a criminal ordinance; (2) the sole purpose of Ordinance 806 is to protect a monopoly, in violation of Article 19, Section 14 of the Louisiana Constitution of 1921, LSA; (3) that the Ordinance is violative of the equal protection clause of the Fourteenth Amendment of the U. S. Constitution in that (a) it undertakes to vest in the Police Jury the authority to discriminate in favor of or against persons engaged in a legitimate business by arbitrarily granting or withholding a license or permit, or (b) it has been administered with an unequal hand, as shown by the precipitate manner in which the warrant for his arrest was issued while the question of the validity of the Ordinance was on appeal.

■ As pointed out by the District Court in its well-considered opinion, police juries under the laws of this State have no powers except those delegated to or conferred upon them by the Legislature.[4] In 1936 the Legislature adopted its Act

---

written contract for the four year term setting forth the above mentioned conditions. 5. One month's payment as set forth in the above proposal shall accompany this bid. This payment shall be forfeited should the successful bidder not execute a contract and fulfill his obliga-

tions. Checks of unsuccessful bidders shall be returned."

4. See Sterling v. Parish of West Feliciana, 26 La.Ann. 59, and cases there cited; State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72; State v. Lassiter, 198 La. 742, 4 So.2d 814.

.222,[5] which authorized parishes and other political subdivisions to acquire, construct, operate, supervise and regulate airports, and to exercise certain powers in connection therewith. The provisions of that statute were re-enacted, in substantially the same form, upon adoption of the Revised Statutes of 1950, as LSA–R.S. 2:131–2:141. By the terms of LSA–R.S. 2:135, cities, towns, parishes or other political subdivisions of the State which establish airports or landing fields, or set apart real property for such purposes, are authorized to (1) "construct, equip, improve, maintain, and operate the same" or to vest such authority "in an officer, board, or body of such political subdivision"; (2) adopt regulations and establish charges, fees and tolls for the use of such airports or landing fields, fix penalties for the violation of such regulations and establish privileges to enforce payment of the charges, fees and tolls; and (3) "Lease for a term not exceeding twenty-five years such airports or landing fields to private parties for operation, or lease or assign for a term not exceeding twenty-five years to private parties for operation space, area, improvements, and equipment on such airports or landing fields, provided in each case that in so doing the public is not deprived of its rightful, equal, and uniform use thereof."

It is clear from the above provisions that the powers there delegated to the various political subdivisions were conferred on them not primarily in their capacity as agents of the State for governmental purposes, but rather as organizations to care for local needs in a private or proprietary capacity, see City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937; 37 Am.Juris., Verbo Municipal Corporations, Sec. 114, p. 727–728, and numerous authorities cited in notes 4, 5 and 8; it necessarily follows that all incidental powers are fairly implied which are necessary to perform such functions in the same efficient manner as would a private person, see Miami Beach Airline Service v. Crandon, 159 Fla. 504, 32 So.2d 153, 172 A.L.R. 1425; Ex parte Houston, 93 Okl.Cr. 26, 224 P.2d 281; North American Co. v. Bird, Fla., 61 So.2d 198; 37 Am.Juris., Verbo Municipal Corporations, Sec. 115, p. 729. A necessary incident to the competent operation of an airport is adequate provision for transportation of passengers throughout the twenty-four hours of the day, and it would be unwarranted to hold that the Police Jury of Calcasieu Parish did not have the power to make contracts to insure the performance of these services. In the absence of a showing of fraud, oppression or gross abuse, we will not substitute our judgment

5. The provisions of Act 222 of 1936 are, in all pertinent respects, identical with the Uniform Airports Act approved by the National Conference of Commissioners on Uniform State Laws in 1935; see 11 Uniform Laws Annotated, p. 193 et seq.

for that of the body authorized by statute to conduct the operation of the airport, see Caz-Perk Realty, Inc., v. Police Jury of Parish of East Baton Rouge, 213 La. 935, 35 So.2d 860, and cases therein cited.

Since the Police Jury was empowered to enter into such a contract, the plaintiff's contention that the purpose of the Ordinance was to protect a monoply cannot be legally sustained; its object was to protect the right granted by the contract, so as to insure to the person who obligated himself to provide the service an adequate return for his furnishing of transportation facilities, proper equipment, competent drivers, and sufficient insurance to protect the public.

That the Ordinance is violative of guarantees of equal protection of the laws in that it seeks to vest in the Police Jury power for discriminatory and arbitrary action, is merely argumentative. The plaintiff does not, and indeed he cannot, contend that he was discriminated against in the award of the contract under consideration, for the record clearly shows that bids were received after public notice, that all bids were considered, and that the contract was awarded to the person who submitted the highest bid.

For the reasons assigned, the writs of certiorari, mandamus, and prohibition with a stay order, issued in these cases are recalled and vacated, and the judgment of the District Court is affirmed.