LANDRY, Judge.
This is an action by the Washington Parish Police Jury, (hereinafter sometimes referred to simply as “Police Jury”), and certain citizens and residents of said parish, to declare null and void an election held by defendant, Washington Parish Hospital Service District Number 1, (hereinafter sometimes referred to simply as the “District”), on December 12, 1961, on the ground that plaintiff Police Jury (the authority which created defendant District) terminated and dissolved the District prior to the holding and conduct of the election in question. The learned trial court dismissed plaintiffs’ demands and plaintiffs have appealed.
The facts giving rise to the present litigation are not in dispute and may be briefly stated as follows: In regular session assembled on September 13, 1961, at the request of several citizens of Washington Parish, the Police Jury, by resolution duly adopted, created and established the corporate body known as Washington Parish-Hospital Service District Number 1 pursuant to authority to be found in LSA-R.S. Title 46, Chapter 10, Sections 1051— 1067, inclusive. In conformity with the-hereinabove referred to statute, appellant Police Jury appointed defendants H. D. El-lzey, C. M. Jones, Stephen Richardson, N. L. Smith and Ray Pettit, members of the Board of Commissioners of the District and fixed October 3, 1961, as the date on which said appointees were to meet and organize themselves as the governing authority thereof. The ordinance referred to was duly published September 28, 1961, in the official journal of the Police Jury. On the designated date, October 3, 1961, the five appointees met as directed, organized as the governing body of the District and proceeded to plan the construction of hospital facilities to serve the residents of the District. In conformity with the statute pursuant to which the District was established, the Board of Commissioners, Washington Parish Hospital Service District Number 1 (sometimes hereinafter referred to simply as the “Board of Commissioners”), entered into contracts with a hospital consultant and a firm of bond attorneys and held numerous public meetings and conferences, all designed to discharge the function of the Board of Commissioners, namely, to provide hospital facilities for the District. On October 17, 1961, the Board of Commissioners made application to the State Bond Board for consent, permission and authority. to hold a special bond election in the district submitting to the qualified property owning tax payers residing therein the proposition of whether bonds should be issued and taxes levied to obtain funds to finance the hospital facilities contemplated. The Board of Commissioners then ordered that a special election be held December 12, 1961, submitting to the resident tax payers of the district the following two propositions :
“Proposition No. 1
“Shall Washington Parish Hospital Service District No. 1, State of Lou *364 isiana, incur debt and issue bonds to the amount of Three Hundred Seventy-Five Thousand Dollars ($375,000.00), to run twenty-five years (25) from date thereof, with interest at a rate not exceeding six per centum (6%) per an-num, for the purpose of acquiring buildings, machinery, and equipment, ■including both real and personal property, to be used in providing hospital service facilities for said Hospital Service District, title to which shall be in the public?
“Proposition No. 2
“Shall Washington Parish Hospital Service District No. 1, State of Louisiana, levy a one (1) mill tax on all of the property subject to State taxation in said Hospital Service District for a period of ten (10) years, beginning with the year 1962 and ending with the year 1971, for the purpose of constructing, maintaining and operating the hospital facilities of said Hospital Service District?”
Upon publication of the notice of the special bond election called for December 12, 1961, considerable opposition to the proposed hospital was voiced by residents of the District and numerous requests were made to the Police Jury to rescind the aforesaid election call, principally by persons residing on the fringes of the District as created and established by the Police Jury. As a result of the opposition mentioned, plaintiff Police Jury, in regular session assembled on November 14, 1961, by a vote of five to four, with two members absent and two abstaining, adopted a resolution or motion rescinding its action creating defendant District.
Notwithstanding adoption of the resolution of cancellation or rescission by the Police Jury, the Board of Commissioners, deeming said action of the Police Jury to be null and void, nevertheless proceeded with the special bond election called to be held December 12, 1961. The election carried favorably in both assessment and popular vote. Defendant Board of Commissioners met December 13, 1961, to open the ballot boxes, examine and count the ballots in number and amount, examine and canvass the returns and declare the results of the election. The minutes of the Board canvassing the election returns and proclaiming the election to have been favorably carried in both assessment and popular vote were duly published December 21, 1961. On January 11, 1962, the Police Jury filed the present action, naming as defendants herein the aforesaid members of the Board of Commissioners and Levon Craine and Dorman A. Crowe, Assessor and Sheriff and Ex-Officio Tax Collector, respectively, Washington Parish. Subsequently, on January 19, 1962, eight citizens of the District intervened herein also seeking to have the aforesaid bond election declared void for reasons hereinafter set forth.
Succinctly stated, the principal contention of appellant Police Jury is that the election in question was null and void because the authority which called it (the District) was not in legal existence on the date said election was held. In this connection appellant maintains the statute authorizing creation of hospital districts grants police juries sole power and authority to establish such corporate bodies and plaintiff Police Jury, as the creating authority, also possesses power to dissolve or terminate the existence of such districts. Based on this premise appellant Police Jury. contends that its action of November 14, 1961, dissolving defendant District pri- or to the election, terminated defendant’s legal existence and the subsequently held election was, therefore, null and void.
The petition of intervention filed on behalf of the numerous private citizens who joined as plaintiff herein, in essence reiterates the position of appellant Police Jury and, in the alternative, asserts certain alleged irregularities in the holding of the election which intervenors contend also *365 render the election null and void. The principal irregularities urged by interven-ors are, in substance, that the commissioners of said election improperly and illegally permitted the wives of property owners to vote their portion of the community property standing in their husbands’ names and permitted certain other unqualified voters to vote in the election. Based on the aforesaid contentions, appellants, Police Jury and Intervenors, prayed for judgment herein decreeing the election null and void and enjoining defendants from promulgating the results thereof as well as prohibiting the issuance of any bonds and the levying or collection of any tax purportedly authorized thereby.
Defendants answered the initial petition ■of Police Jury as well as that of interven-ors averring what amounts to a general denial. To the petition of appellant Police Jury, defendants filed exceptions of no right •and no cause of action based on the proposition that said plaintiff is without right to institute such an action for the benefit and in place of taxpayers of the district and that the Police Jury is without legal right or authority to abolish the District considering the statute authorizing its creation ■also provides such corporate bodies shall have perpetual existence. In addition to generally denying the allegations of the petitions of appellants, defendants further reiterate the grounds of their said exceptions, and in the alternative aver that the alleged attempt of the Police Jury to dissolve the District was null, void and of no effect in that the resolution of dissolution was not adopted by a majority, vote of the Police Jury present at the meeting of November 14, 1961, considering the records of the Police Jury indicate the resolution of dissolution was voted at a meeting at which only 11 of 13 Police Jurors were present and the vote thereon was five in favor, four .against, two absent and two abstaining from voting.
Our learned brother below dictated into the record oral reasons for his judgment ■dismissing plaintiffs’ demands. He rejected defendants’ contentions that the District enjoyed perpetual existence and was not subject to dissolution after creation. He also held the right of termination enjoyed by the Police Jury had been lost and forfeited because of its failure to promptly rescind the resolution creating the District. In essence the learned trial court held that if the Police Jury desired to rescind the action of its September meeting ' it should have done so at its regular meeting in October and should not have delayed until November 14, 1961. He further found that in the interval between September 13, 1961, and November 14, 1961, defendant Board of Commissioners entered into binding contracts with certain third persons for rendition of services to the District, namely, a hospital consultant and a firm of bond attorneys, and that said contracts endowed said third parties with inalienable rights which would be violated and abrogated by the dissolution of the District. Lastly, the reasons for judgment handed down by the learned trial court indicate intervenor’s stipulation to the effect that the alleged election irregularities, if established, would not have been sufficient to alter the outcome of the election.
The sole specification of error tendered by appellants is that the trial judge erred in holding that appellant Police Jury did not act timely in rescinding its action creating the District. In this regard it is contended that the Police Jury as the governing authority of the parish is vested with considerable discretion in the performance of its assigned governmental functions and the exercise thereof should not be interfered with by the judiciary except in instances of abuse resulting from arbitrary, capricious, unreasonable or fraudulent action on its part.
In view of the foregoing, the question herein presented for decision is the authority, vel non, of a parish police jury to terminate the existence of a Hospital Service District created pursuant to the provisions of LSA-R.S. 46:1051-46:1067, inclusive.
*366 Our careful analysis of the statute in question reveals that the police juries of the state are therein authorized to create hospital service districts whose duties and functions shall be to own and operate hospitals for the care and treatment of physically ill or disabled persons; to administer other related facilities rendering care to the ill or disabled; to promote and conduct scientific research and training related to the sick and injured insofar as such research and training can be conducted in connection with hospitals; to participate and cooperate in any project designed and conducted to promote the general health of the community and to cooperate with other public and private institutions engaged in providing hospital and health services to the residents of the district.
Section 1053 stipulates that any district formed or created shall be governed by a Board or Commission consisting of five commissioners appointed for terms as follows : two for two years, two for four years and one for six years. Upon expiration of the initial terms, successors shall be appointed for terms of six years. The Board is expressly given the right, power and authority to appoint a “Director” who shall serve at the pleasure of the commission. In substance, the Director is given such duties as constitute him the chief administrative officer of the District with authority to conduct the business and affairs of the District subject to the policy set by and instructions issued to him by the Board of Commissioners.
Again adverting to Section 1051, we note that it provides the several police juries of the state may, upon their own initiative create a hospital service district. We note, however, Section 1059, which reads in full as follows:
“§ 1059. Petition for organization of district
“Upon failure or refusal of the police jury of any parish to organize a hospital service district, they are hereby required to and shall form such district when petitioned to so do upon petition presented to the police jury, signed by not less than twenty-five persons owning or assessed for lands in said districts. In presenting such petition to the police jury, such petition shall set forth substantially the boundaries of the district which is proposed to be organized. Acts 1950, No. 420, § 9.”
Even a casual reading of Section 1059 discloses that upon the petition of 25 persons owning or assessed for lands situated in a proposed district, it becomes the mandatory duty of the police juries to create a hospital service district.
The crux of the present' controversy, however, is to be found in Section 1060, which we herewith quote in toto:
“§ 1060. District to constitute body corporate; powers
“Any hospital service district thus created and named by any police jury or any parish in the state shall constitute a body corporate in law with all the powers of a .corporation, shall have perpetual existence, shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created. Such hospital service district shall have the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a hospital service district and may require (sic) by donation or purchase, any existing hospital facility in the district. It shall also have the power and authority to acquire any and all necessary equipment and buildings for the purpose of performing the objects for which it is formed, and shall *367 own all sites and physical facilities which are acquired either by donation, purchase, expropriation, exchange and otherwise in full ownership. Acts 1950, No. 420, § 10.” (Emphasis by the Court)
Our examination of the statute in question discloses the absence of express authority on the part of Police Juries to dissolve hospital districts. Learned counsel for appellants, however, maintains the power of dissolution or termination nevertheless exists in the several police juries by virtue of that line of jurisprudence holding that such bodies, being the governing authorities of the parishes within the state, have inherent and legislatively conferred executive powers and functions and are vested with discretion with which the judiciary should not interfere except upon a showing of abuse thereof. As authority for the position assumed, esteemed counsel for appellants cites National Liberty Insurance Company of America v. Police Jury of Natchitoches Parish, 5 Cir., 96 F.2d 261; Dupuy v. Police Jury of Parish of Iberville, 115 La. 579, 39 So. 627; Caz-Perk Realty, Inc. v. Police Jury of East Baton Rouge Parish, 213 La. 935, 35 So.2d 860; and Jeffries v. Police Jury of Rapides Parish, La. App., 53 So.2d 157. Upon examination of the cited authorities we find none decisive or controlling of the issue at hand. Indeed, the question herein presented appears to be one of first impression considering we have been cited no authority in point and our own research has failed to reveal an applicable precedent.
It is quite true as contended by counsel for appellants that Police Juries possess inherent as well as legislatively delegated power and authority to rescind its official actions provided such rescission does not abrogate or contravene other rules of law including, but not limited to, the legal prohibition against the divesting of vested rights and the impairment of contracts lawfully made and entered into. It is equally true, however, that police juries, being creatures of and subordinate political subdivisions of the state, have only such powers as are conferred upon them by the constitution and laws of this state. State v. Jordan, 207 La. 78, 20 So.2d 543; Stone v. Police Jury of Parish of Calcasieu, 226 La. 943, 77 So.2d 544.
In substance learned counsel for appellants contends the words “perpetual existence” as contained in Section 1060, simply mean “perpetual succession” in that the legislature merely intended thereby that such districts enjoy continued existence in that it was unnecessary for the Police Juries to re-create such districts from time to time to insure their uninterrupted duration or being. We detect no language in the statute indicative of such legislative intention.
 Appellants’ contention in this regard must be considered and disposed of in the light of certain applicable and well established rules of statutory construction. In determining the legislative intention as expressed in a particular statute all of the component parts of the statute must be considered together. State ex rel. Barre v. Fulton, La.App., 63 So.2d 21. An act is to be so interpreted that, if possible, no clause, sentence or word therein shall be deemed superfluous or meaningless. The meaning of a particular word, clause, sentence or paragraph must be determined in the light of the statute as a whole, each being construed with respect to and in the light of all other provisions to the end that the whole be construed in harmony with the purposes and objects thereof as announced therein. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336. Courts must, if possible, give effect to every sentence, word and paragraph in a statute and in so doing must study and analyze the entire act in order to arrive at the intention of the legislature. State v. Orleans Parish School Board, La. App., 118 So.2d 471.
The power to create hospital service districts is constitutional in origin. *368 L.S.A. Constitution Volume 3, Article 14, Section 14(d-2) as amended by Act 536-of 1948. The power conferred by virtue of the aforesaid constitutional provision, implemented by the provisions of LSA-R.S. 46:1051 et seq., is a special authority which may be exercised by the police jury only pursuant to the terms and conditions of the source from which the authority emanates. We deem it of particular and important significance that neither the constitutional article nor statute expressly or specifically confers upon the police juries power to terminate a hospital district once created. If the legislature had intended the police juries to possess authority to terminate such districts it would have been a relatively simple matter to expressly so state in the statute which authorized creation of such agencies.
 We deem it peculiarly significant that the statute in question contains no provisions expressly authorizing termination of a hospital district created by a parish police jury. Considering the purpose of the act in question is to promote the health and physical welfare of the public at large, it may well be that the legislature, regarded hospital service districts of such vital importance that once created they could be dissolved, or their legal existence terminated only by the legislature itself. In any event, granting perpetual existence to such political corporations cannot be said to be unreasonably related to the announced purpose and aim of the statute. Nor can the perpetual existence of such political corporations be said to constitute an arbitrary and capricious exercise of legislative authority.
Of further considerable significance is the fact that in authorizing the creation of political corporations the legislature has seen fit to endow the creating authorities varying power with respect to the termination or dissolution thereof. In addition to LSA-R.S. 46:1060 (with which we are herein presently concerned) we note that Fire Protection Districts are similarly endowed with perpetual existence, LSA-R.S. 40:1500; and Gas Districts, LSA-R.S. 33:4304, are likewise granted continued life. We also note that with respect to Fire Protection and Gas Districts (as is the case with Hospital Service Districts), no express authority is granted Police Juries to terminate.
Such is not the case, however, with Parochial Sewer-age Districts, Airport Authorities, Gravity Drainage and Sub-drainage Districts and Road and Sub-road Districts. LSA-R.S. 33.3884 and 33:3885, . which authorize creation of Parochial Sewerage Districts by Police Juries expressly provide for the termination of such public bodies. Gravity Drainage Districts and Gravity Sub-drainage Districts may also be terminated by the creating authority prior to the incurring of debt, the issuing of bonds or the levying of taxes. LSA-R.S. 38:1752 and 38:1764. With respect to Road and Sub-road Districts authority is conferred to terminate at any time subject only to the restriction that contractual rights shall not be impaired thereby. LSA-R.S. 48:577 and 48:582. Airport Authorities enjoy perpetual existence “until revoked by resolution” of the governing body which creates them. LSA-R.S. 2:602.
A careful reading of the statutory provisions authorizing creation of Recreation Districts reveals such corporate bodies are not granted perpetual existence. See LSA-R.S. 33:4562-33:4566. With respect to Water Districts, no mention is made of perpetual existence and express authority is conferred to terminate at any time subject only to the prohibition that no obligation incurred by such district during its existence shall be impaired by its termination. The statute authorizing creation of School Districts mentions neither the perpetual existence of such bodies nor the authority of the creating agency (School Boards) to terminate their existence. LSA-R.S. 17:1371.
Equally without merit is the contention of counsel for appellants that the statute *369 intends “perpetual existence” shall be enjoyed only by those Hospital Service Districts created by the Police Juries in compliance with the petition of residents as provided for in LSA-R.S. 46:1059 and that perpetual existence is not granted those created by the Police Juries on their own initiative under authority of LSA-R.S. 46:1051, as is the case in the matter presently before us.
No such qualifying language is to be found in Section 1060. Our careful examination of the statute as a whole indicates the legislature intended no distinction or differentiation between districts created on the initiative of a police jury and those organized pursuant to petitions of residents insofar as concerns the question of continued or perpetual existence. On the contrary, the statute, as a whole, leaves the clear impression that all districts created pursuant to the act are to enjoy equal dignity, powers, duties, rights and longevity. Moreover, whereas Sections 1064 and 1065 recite that such districts are considered subdivisions of the state for purposes of purchasing and acquiring lands and purchasing, acquiring and constructing hospitals and similar facilities necessary to carry out the purposes of Chapter 10 and also provide for the calling of tax elections, it is of the utmost significance that express authority to expropriate property, incur debt, sue and be sued and acquire buildings and equipment are conferred only by Section 1060, the same section which provides for “perpetual existence”. Clearly, the legislature intended such rights, powers and functions to be enjoyed and exercised by all hospital service districts irrespective of whether created upon the initiative of the police juries or pursuant to petition. Nothing in the statute indicates legislative intention to grant the right of expropriation and the other powers enumerated in Section 1060 only to those Boards of Commissioners appointed pursuant to a petition of residents and deny same to those created upon the initiative of the Police Jury. Indeed, without such rights and powers a Board of Commissioners, irrespective of the section under which it was created, would be a useless, inoperative instrumentality incapable of performing the purpose for which it was created.
From the foregoing, we conclude the legislature intended all Hospital Service Districts formed pursuant to the authority of LSA-R.S. 46:1051-46:1067 enjoy perpetual existence and that such agencies of the state are not subject to termination by the several Police Juries in the state save and except with express constitutional or legislative authorization.
The views herein expressed, render moot the question of whether the alleged resolution of rescission passed November 14, 1961, was regularly and duly adopted.
Judgment affirmed.