Dear Treasurer Duncan:
This office is in receipt of your request for an Attorney General's opinion regarding Act 1380 of the 1999 Regular Legislative Session ("Act 1380"), which request has been assigned to the undersigned for attention and reply.
Of interest to you are the provisions of Act 1380 that amend and reenact La. R.S. 47:322.38(A) and (B)(2), and that enact La. R.S.47:322.38(C). For your convenience, a copy of Act 1380 is attached hereto and made a part hereof.
In accordance with Act 1380, the avails of the tax imposed by La. R.S. 47:321 on the sale of services in Orleans Parish is to be credited to the Bond Security and Redemption Fund and then paid into the New Orleans Area Tourism and Economic Development Fund (the "Fund"). La. R.S. 47:322.38B(1) provides that the monies in the Fund are then to be appropriated and distributed for the purposes and in the amounts set forth in the statute. La. R.S.47:322.38B(2), as amended by Act 1380, provides that the remainder of money in the Fund (the "Grant Money"), after the enumerated distributions are made, are to be appropriated and distributed to:
 ". . . each state senator and state representative whose district includes all or any portion of Orleans Parish, to be administered through the Louisiana Stadium and Exposition District to be used within Orleans Parish for the provision of grants for tourism, economic development, and other activities. . .".
La. R.S. 47:322.38(C), as amended by Act 1380, provides that the Grant Money placed in the Fund on or after July 1, 1999 shall be designated for grants to be selected by the state senators and state representatives with districts that include a portion of Orleans Parish.
Section 2 of Act 1380, which contains no reference to any particular statutory provision, purports to provide for the treatment of money remaining in the Fund "at the end of fiscal year 1998-1999". However, Section 2 does not clearly specify a person or entity to receive or be responsible for administration of those funds. Rather, Section 2 provides, in part, that all monies in the Fund at the end of the 1998-1999 are to be distributed "for the purposes and to the persons and entities under the terms and conditions provided in Section 2 of this Act." Therefore, you have requested our opinion as to who is responsible to receive the distribution of these funds from the treasury and who is to administer the allocation of those funds.
Since Section 2 of the Act does not contain any references to "purposes persons and entities" that could receive funds, it is our opinion that the reference to "Section 2 of this Act", which is contained within the first sentence of Section 2 of the Act, is erroneous. In our opinion, the legislature intended to refer to Paragraph B(2) of La. R.S. 47:322.38, the statute which Act 1380 amended, and further intended for the funds remaining in the Fund at the end of the 1998-1999 fiscal year to be appropriated to the state senators and representatives with districts that include a portion of Orleans Parish (other than the senator representing Senatorial District 6, whose allocation is specifically allocated to the New Orleans Police Foundation), to be administered by the Louisiana Stadium and Exposition District.
We base our opinion upon the fact that the remainder of Section 2 refers to the manner in which the funds are to be allocated among those senators and representatives for grant designation. Although the percentage of the funds allocated to each legislator in Section 2 differs from the allocation made in Section B(2) of La. R.S. 47:322.38, use of the word "However" in the second sentence of Section 2 indicates that the difference in the percentage of funds so allocated is to be the only difference in the way those funds are to be treated from Grant Money placed in the Fund on or after July 1, 1999.
Our opinion herein is also based upon the following rules of statutory construction:
Clerical and typographical errors in the Revised Statutes shall be disregarded when the meaning of the legislature is clear. La. R.S. 1:5. Verbal inaccuracies or clerical errors in the use of words or numbers in a statute may be corrected in the interpretation thereof whenever necessary to carry out the manifest intention of the Legislature, as gathered from the context. State v. Rogers, 87 So. 504 (La. 1921). To give a statute the effect obviously intended by the Legislature, a manifest error or obvious inadvertence in the use of words may be corrected. City of Shreveport v. Southwestern Gas Elec. Co.,74 So. 559 (La. 1917); City of Crowley v. Police Jury of AcadiaParish, 70 So. 487 (La. 1915). When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La.C.C. Art. 12. In determining legislative intent as expressed in a particular statute, all of the component parts of the statute must be construed together. Washington Parish Police Jury v.Washington Parish Hospital Service District No. 1, 152 So.2d 362
(La.App. 1st Cir. 1963).
We note, as did a member of your staff in a discussion with the undersigned that Act 1380 may be subject to constitutional challenge. However, as you are probably aware, the case law of this state provides that legislative enactments are presumed constitutional until declared otherwise by the judiciary. Polkv. Edwards, 662 So.2d 1128 (La. 1993); State in the Interestof JAV, 558 So.2d 214 (La. 1980); Gulf Oil Corporation v.State Mineral Board, 317 So.2d 576 (La. 1975). Additionally, it is the duty of this office to defend the constitutionality of Louisiana's legislative enactments.
We trust the foregoing to be of assistance to you. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: JEANNE-MARIE ZERINGUE BARHAM 
Assistant Attorney General
JMZB/sam