## JOHN N. A. GRISWOLD *vs.* GEORGE WEBB.

When a passenger orders a carriage to meet him at, and take him from, the terminus of a common carrier, such carriage is so far the private carriage of the passenger that it ceases to be "standing for hire," and to be a "hackney carriage," within the meaning of a rule of the common carrier forbidding hackney carriages to attend in certain specified places.

A common carrier owning or controlling its terminals may exclude from them persons soliciting trade or hacking or expressing without its license, but cannot deprive a passenger of the privilege of being carried from the terminus in a convenient and usual way, nor can it compel a passenger to take certain carriages or none.

TRESPASS QUARE CLAUSUM. Heard by the court, jury trial being waived.

*Providence, November* 30, 1889. STINESS J. The plaintiff is owner of Commercial Wharf in Newport, a part of which is leased to the Newport and Wickford Railroad and Steamboat Company as a terminus. To preserve order upon the wharf, stands are let for hackney carriages, and the following rules are prescribed for its use :

### "RULES FOR HACKMEN AND OTHERS.

"I. Drivers of hackney carriages shall remain on or near their carriages, except when carrying baggage to or from them.

"II. No one shall occupy a hack stand or express stand except the licensee or his employés.

"III. No hackney carriage or express wagon shall stand on the space to the eastward of the restaurant building, or on the roadways, except on licensed hack stands, even though ordered in advance by a passenger."

East of the restaurant building is a plank walk for passengers, and east of the walk a space is reserved for private carriages. The rest of the wharf is used for sidewalks, roadways, and buildings. The defendant, driver of a hackney carriage in Newport, went to the wharf, on the day in question, for a lady who was to arrive in the boat, as he had been ordered to do by the passenger, or some one in her behalf. He backed his hack as near as he could to the space reserved for private carriages, when he was ordered to leave the wharf by the superintendent, upon the ground that he had no right to be there, having no license from the owner. The plaintiff claimed that the wheels of the defendant's carriage were backed on to the plank walk, but, upon all the testimony, we are not satisfied this was so, or, if so, that it was anything more than accidental. At any rate, the order to leave the wharf was not put upon this ground, but because he had no right there. Upon receiving the order to leave, the defendant stated both to the plaintiff and to the superintendent of the wharf that he had been ordered there for a passenger, and he refused to leave. The plaintiff then called a policeman, who moved the carriage to another place in the roadway, where the defendant remained until the boat

arrived, when he took his passenger and drove away. The passenger was an infirm lady, who had been accustomed to ride with the defendant, and one who was obliged to use a stool, which he had with him, to aid her in getting into the carriage. The plaintiff sues in trespass, and the defendant justifies under a right as servant of the passenger. The question is, whether the defendant has the right to enter and remain upon the wharf to take the passenger, notwithstanding the rules and the order to leave. We understand the rules to forbid an unlicensed hackney carriage to stand upon the wharf at all; for none are allowed to stand in the roadways, except on the licensed stand, and none are allowed to occupy a stand without a license. But the wharf is leased to a common carrier of passengers, with a provision that the space east of the restaurant shall be reserved for the use of private carriages of passengers arriving at the wharf.

The question of right, therefore, is the same as it would be between passengers and a company which owns its terminus. While such ownership carries with it a right of control, in most respects the same as in private property, a railroad station or steamboat wharf is, to some extent, a public place: the public have the right to come and go there for the purpose of travel; for taking and leaving passengers, and for other matters growing out of the business of the company as a common carrier; but the company has the right to say that no business of any other character shall be carried on within the limits of its property. It has the right to say that no one shall come there to solicit trade simply because it may be convenient for travellers, and so to say that none, except those whom it permits, shall solicit in the business of hacking or expressing. When notice of such prohibition has been given, the license which otherwise might be implied is at an end, and it is the duty of persons engaged in any such business to heed the notice and to retire from the premises. *Barney* v. *Oyster Bay & Huntington Steamboat Co.* 67 N. Y. 301; *Commonwealth* v. *Power et als.* 7 Metc. 596. But while this is so, the company cannot deprive a passenger of the ordinary rights and privileges of a traveller, among which is the privilege of being transported from the terminus in a reasonably convenient and usual way. A company cannot compel a passenger to take one of certain carriages, or

none at all; nor impose unreasonable restrictions which will amount to that. If a passenger orders a carriage to take him from the terminus, such carriage is, *pro hac vice*, a private carriage, not in the sense that the passenger has a special property in it, so as to be liable for the driver's negligence, but in the sense that it is not "standing for hire." *Masterson* v. *Short*, 33 How. Pr. 481.

The driver is not engaged in his vocation of soliciting patronage, but is waiting to take one with whom a contract has already been made. No question is made that a passenger may have his own carriage enter the premises of a carrier to take him away; but to say that one who is not so fortunate as to own a carriage shall not be allowed to call the one he wants, because it is a hackney carriage, would be a discrimination intolerable in this country. Yet this is really the plaintiff's claim. Every passenger has the right, upon the premises of the carrier, to reasonable and usual facilities for arrival and departure; and so far as this includes the right to be taken to and from a station or wharf, it is immaterial whether he goes in a private or a hired carriage. Decisions upon this question have not been numerous, and we know of but one directly in point; although in others there are *dicta* which indicate what is understood to be the law. *Summitt* v. *The State*, 8 Lea, Tenn. 413, was a conviction of the defendant, a watchman in a depot, for assault in ejecting a hackman therefrom. The company had forbidden hackmen to enter the building. Notwithstanding this rule, the right of a hackman to go into a part of the depot to obtain the luggage of a passenger, whose check he had, was not controverted. The prosecutor, having the check of a passenger, was in another part of the depot, but it was held that the defendant was not justified in ejecting him altogether from the station, and the conviction was sustained. *Tobin* v. *Portland, Saco & Portsmouth R. R. Co.* 59 Me. 183, was an action for damages by a hackman who was injured by stepping on a defective platform when leaving a passenger at the station. The court say : " The hackman conveying passengers to a railroad depot for transportation, and aiding them to alight upon the platform of the corporation, is as rightfully upon the same as the passengers alighting." In this case it was not claimed that any rules had been violated. The

recent case of *Old Colony R. R. Co.* v. *Tripp*, 147 Mass. 35, was an action of trespass against an expressman who solicited patronage in the plaintiff's station, contrary to its rules. W. Allen, J., says : " Passengers taking and leaving the cars at the station, and persons setting down passengers or delivering merchandise or baggage for transportation from the station, or taking up passengers or receiving merchandise that had been transported to the station, had a right to use the station buildings and grounds superior to the right of the plaintiff to exclusive occupancy. All such persons had business with the plaintiff, which it was bound to attend to in the place and manner which it had provided for all who had like business with it." A statute of Massachusetts prescribes that railroad corporations shall give to all persons equal facilities for the use of its depot. The court held that this statute applied only to the relations between common carriers and their patrons, or those who had the right to use the station. It did not give the defendant the right to go there to solicit business because another had the right. See, also, *Harris* v. *Stevens et als.* 31 Vt. 79.

In *Markham* v. *Brown*, 8 N. H. 523, an action of trespass brought by an innkeeper against a stage driver, the court say the defendant had clearly a right " to go to the plaintiff's inn with travellers, and he might of course lawfully enter it for the purpose of leaving their baggage and receiving his fare." The case most nearly in support of the plaintiff's contention, of those we have seen, is *Barker* v. *Midland Railroad Co.* 18 C. B. 46, where it was held that an omnibus proprietor carrying passengers to and from a station could not maintain an action for a refusal to allow him to drive his vehicle into the station yard. As the proprietor was not using or seeking to use the railway, it was considered that the company owed him no duty. Jervis, C. J., said a passenger would, no doubt, have a right of action, if unduly obstructed, but a violation of duty to him would not give an action to the plaintiff. It is to be observed that the recent English cases are mainly controlled by statute 17 & 18 Vict. cap. 31, to which the Massachusetts statute is similar. They relate chiefly to the question whether a prohibition to one to ply for passengers within a station, when the same right is granted to another, is an undue preference under the statute. It is generally held that it is not. See

*In re Beadell*, 2 C. B. N. S. 509; *Ex parte Painter*, 2 C. B. N. S.
702; *Hole* v. *Digby*, 27 W. R. 884. In the latter case it seems
to be conceded that one going, *bonâ fide*, to meet a passenger
would not be guilty of trespass. In *Marriott* v. *London & S. W.
R. R. Co.* 1 C. B. N. S. 499, the defendant company was ordered
to admit the complainant's omnibus into the station to receive
and set down passengers and goods, as other public vehicles were
admitted. Upon the question before us, we do not think these
cases are in conflict with the views we have above expressed.
The case at bar differs from *Barker* v. *Midland Railroad Co.* in
this, that here the hackney driver is not a plaintiff seeking to
recover damages for the revocation of a license to go upon the
wharf, or for a breach of duty to another, but the defendant
against an alleged trespass, who relied upon his right as servant
of another to justify his being there.

We think the justification is sufficient. It is substantially
given by the terms of the lease to the Steamboat Company. This
does not deprive the owner of the general control of his wharf,
nor interfere with his reasonable rules for its management. It
simply secures to a passenger the common privileges of a pas-
senger, and enables the hackney driver to shield himself from an
apparent violation of the rules only when he is acting, *bonâ fide*,
as the servant of such passenger. This qualification guards the
owner from an incursion of unlicensed drivers under a mere pre-
tence of serving passengers, and also confines the right of solicit-
ing business on his premises to those whom he may permit.

We give judgment for the defendant for his costs.

*Francis B. Peckham & Samuel R. Honey*, for plaintiff.

*William P. Sheffield & William P. Sheffield, Jun.*, for defend-
ant.