Nos. 16,387-16,288.

Rocky Mountain Motor Company v. Airport Transportation Company et al.
(235 P. [2d] 580)

Decided August 20, 1951.

Messrs. Hodges, Vidal & Goree, Mr. Joseph G. Hodges, Mr. Ralph Sargent, Jr., for plaintiff in error.

Mr. J. Glenn Donaldson, Mr. Abe L. Hoffman, for defendant in error, City and County of Denver.

Messrs. Johnson & Robertson, for defendant in error, Airport Transit Company.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

For brevity, plaintiff in error, Rocky Mountain Motor Company, will be referred to as "Yellow Cab," and the defendants in error as "Airport Transit" and "City of Denver."

Yellow Cab sought an injunction against Airport

Transit "for unlawfully interfering with its business" and for damages. The City of Denver was permitted to intervene. Temporary restraining order was granted and upon full hearing the court entered its final judgment denying all injunctive relief and entered an order severing the other issue on the question of damages on Airport Transit's amended counterclaim. Upon full hearing, and stipulation limiting the items of the claim, judgment was entered for Airport Transit in the sum of $1,798.77 and subsequently was by the court reduced to $1,638.84. The two cases are consolidated for this review.

Seventeen points are specified as error, which, summarized, consist of the contention that the court erred in sustaining the motion of Airport Transit to dissolve the temporary restraining order, and error as to certain items involved in the counterclaim.

As a terminal facility of the City and County of Denver, for the development, promotion and accommodation of air commerce and aerial navigation, a municipal airport, now known as "Stapleton Field," was established by the city council of the City of Denver by ordinance No. 128 in the year 1929; and by said ordinance was placed under the control and management of the department of improvements and parks of the City of Denver.

After the establishment of the airport, and for approximately twenty years, down to the time of the commencement of this action, Yellow Cab, without a written lease, contract or permit from the city, enjoyed what was in effect an exclusive concession, consisting of a small office in the administration building at the airport, for which it paid a nominal rental to the City of Denver, and in consequence thereof, handled practically all of the air-line taxicab business to and from the airport.

About a year prior to 1949, the manager of improvements and parks of the City and County of Denver determined that the transportation facilities to and from the airport were not all that could be desired and thereupon requested the submission of bids on forms prepared

to obtain data for that purpose. The succeeding manager of improvements and parks canvassed and rejected the bids. A second invitation was prepared and advertised and bids were again received, canvassed and rejected. Yellow Cab was a bidder on both occasions. With this condition prevailing, the city council in 1949, by special ordinance No. 19, provided for a special class of limousine and taxi service to and from the airport and for a taxicab concession, and provided for the issuance of a revocable permit, granting the permittee "a license for limited taxicab service under which each trip for the transportation of any passenger must either originate or terminate at Stapleton Airfield * * *."

This ordinance was passed by the city council April 4, 1949 and was signed and approved by the Mayor on that date. Airport Transit received a revocable permit for the operation of a taxicab and limousine service as provided by the ordinance on April 11, 1949. This followed the advertisement for bids for the operation of such taxicab and limousine service by the manager of improvements and parks; and the permit stated that upon the consideration of the bids received, the bid of the Airport Transit was the most favorable. The permit set out the rates to be charged for the limousine and taxicab service and the compensation to the city, stated as being $100.00 per month or ten per cent of the gross receipts per month, whichever amount was greater, coupled with a requirement that the permittee was to begin operations within sixty days from the date of the granting of the revocable permit. On April 18, Airport Transit commenced its taxicab and limousine operations.

The next day Yellow Cab filed its complaint seeking a temporary restraining order against the operations of the Airport Transit pending hearing on temporary injunction. After hearing, the temporary restraining order was issued on that date as of five o'clock P. M. On April 28 and 29, a hearing was had on Airport Transit's motion to dissolve the temporary restraining order and on Yel-

low Cab's motion for a temporary injunction. The motion to dissolve the temporary restraining order was granted and motion for temporary injunction denied and an order entered authorizing Airport Transit to commence operations as of eight o'clock A. M. April 30, 1949. The next hearing for permanent injunction consumed six days and was concluded on June 11, 1949 by the court's denial of a permanent injunction, and its announcement that the matter of damages would be taken up at some future date. The hearing on the question of damages was held October 11, 1949 on the amended counterclaim of Airport Transit, which resulted in the judgment hereinbefore set out, resulting from the suspension of Airport Transit's operations by the temporary restraining order.

Several contentions of Yellow Cab may be epitomized into the general contention that the operations of Airport Transit were unlawful and that Yellow Cab's business was being interfered with and injured by an unlawful competitor which it had the right to enjoin; that Airport Transit's operations were unlawful because not legally authorized, due to noncompliance by the city authorities with Ordinance No. 165, in that the Manager of Safety held no public hearing as to the necessity, and further that the title to Ordinance No. 19, Series of 1949, under which the revocable permit was issued to Airport Transit, was not broad enough to include the issuance of a limousine or taxicab permit.

Airport Transit stands squarely on the proposition that there was full compliance by the city authorities in the issuance of its permit under Ordinance No. 19, Series of 1949, which has sufficient title and which the city council had full power to grant.

The City of Denver, as intervener, disclaims all interest or concern about the controversy between Airport Transit and Yellow Cab on the counterclaim of Airport Transit and the judgment thereon. It properly asserts an interest directed toward the assuring of efficient transportation to and from its airport facilities, which it claims it has the

right to control, and that Ordinance No. 19, Series of 1949 is an expression of the city council directed to that end. It is the city's contention: (a) That the city has power to give an exclusive right to a stand at the airport and incidental thereto, transport passengers to and from that stand over the streets of the city and the roadways of the airport; (b) that a competing company, having a license to do business indiscriminately over the streets of the city, does not have a private right to obtain an injunction to prevent competition; (c) that the title to Ordinance No. 19 is adequate, and that Yellow Cab is estopped to question its sufficiency because it submitted a bid for the permit in compliance with the provisions of the ordinance; (d) that under Ordinance No. 19, the city council and the manager of improvements and parks is empowered to accept that which, in their judgment, they consider the best bid for the taxicab stand concession, and that no public hearing on the question of convenience and necessity is required under the ordinance.

 This dispute centers around the interpretation and application of two city ordinances concerning motor vehicle operations for hire, and may well be determined if by reasonable construction the two ordinances are found to be harmonious and not conflicting, to obtain the legitimate ends or intention of each. That the right and power to control motor vehicle operations on the streets of Denver and its property and issue revocable permits in connection therewith is vested in the city council is not disputed. *People ex rel. Foley v. Stapleton*, 98 Colo. 354, 56 P. (2d) 931.

One of the ordinances involved is Ordinance No. 165, Series of 1947, known as the general taxicab ordinance. In substance this ordinance was intended to regulate the general taxicab business within the City and County of Denver, and vested in the manager of safety the authority to determine what individuals or companies should operate such taxicabs, with the limitation that the total number of taxicabs upon the streets at any one time

should not exceed three hundred. It further provides that the manager of safety, who, under the charter, is the general licensing authority, could exercise his discretion in the issuance of taxicab licenses, after a public hearing, to determine the matter of public convenience and necessity. Under the provisions of this ordinance, Yellow Cab obtained what is designated as a "master license" and under such license, according to the record, operated approximately ninety-nine taxicabs.

Clearly within its power and authority, the city council, two years later, determined that special provision should be made for taxicab and limousine transportation to and from the airport, known as Stapleton Field, which is owned in fee by the city, including the roadways thereon. In furtherance thereof, it enacted Ordinance No. 19, Series of 1949, which, by its terms, clearly indicates that it is absolutely distinct from the general taxicab Ordinance No. 165, and is special in all of its features. Due to its length, this opinion will not be encumbered by a quotation of the full ordinance, but the sections thereof that are here pertinent and the title which has been questioned as being too narrow are as follows:

Title

"A Bill

"For the Ordinance Providing for Revocable Permits and Concessions for Limousine Service and Taxicab Stand at Stapleton Airfield; Providing Penalties for Violation Thereof."

Sections 6, 7 and 8 are as follows:

"Section 6. Taxicab Concession.

"(a) Subject to the provisions of subsection (b) hereof the Manager of Improvements and Parks may grant as a concession a taxicab stand at a convenient location at or near Stapleton Airfield Administration Building and a booth or space at such building for telephone and dispatching purposes to the highest or most

favorable bidder, provided that only one such concession shall be granted and outstanding at any one time. .

"(b) The Manager of Improvements and Parks is authorized and directed to solicit or advertise for proposals or bids for a taxicab concession for taxicab service to and from Stapleton Airfield. Such proposals or bids submitted shall include the rates proposed to be charged per person for such taxicab service. A proposal or bid submitted by a responsible person which in the judgment of the Council offers fair and reasonable rates may be accepted by the Manager of Improvements and Parks. Such acceptance shall only be made after adoption by council of a resolution approving the rates proposed to be charged, such rates, however, shall not be in excess of the rates of fare for taxicab service established pursuant to Ordinance No. 165, Series of 1947, as amended, (Section 31, Rates of Fare). Upon adoption of such a resolution by the Council the Manager of Improvements and Parks is authorized and directed to grant such concession to the person submitting the approved proposal or bid. In granting such concession the Manager of Improvements and Parks shall specify the rates which have been proposed and accepted as hereinabove set forth. . .

"(c) No concession shall be granted for such taxicab service except pursuant to the provisions of paragraph (b) of this section.

"(d) It shall be unlawful for any person to demand or receive any charges for such taxicab service in excess of the rates established pursuant to the provisions of paragraph (a) of this section.

"(e) It shall be unlawful for any person other than the grantee under paragraph (a) of this section to use said taxicab stand or to operate any taxicabs therein except when necessary for the purpose of discharging passengers thereat. .

"Section 7. Limited Taxicab Service.

"Upon granting of any taxicab stand concession as provided in Section 6 hereof, the Manager of Improve-

ments and Parks shall notify the Manager of Safety and Excise thereof and in the event the grantee is not duly licensed as a taxicab operator pursuant to Ordinance No. 165, Series of 1947, as amended, the Manager of Safety and Excise shall thereupon issue to such grantee a license for limited taxicab service under which each trip for the transportation of any passenger must either originate or terminate at Stapleton Airfield. The grantee shall be required to comply with such license, and the issuance thereof shall be subject to all the provisions of Ordinance No. 165, Series of 1947, as amended, with the exception of Section 20 (Number of Taxicabs) Section 23 (Duty to Accept Passengers) and Section 31 (Rates of Fare) thereof. In each case where such license for limited taxicab service is granted such limitation shall be noted on the certificate evidencing such license and shall be plainly posted, marked or painted on the side of each taxicab of the licenses in letters of sufficient size to be seen a distance of 75 feet. The Manager of Improvements and Parks may, with the approval of the Manager of Safety and Excise, determine the number of taxicabs which may be operated under license for limited taxicab service.

"Section 8. Transportation by Others Not Prohibited.

"Nothing herein contained shall be construed to prohibit the Denver Tramway Company, or any taxicab operator or driver licensed under the provisions of Ordinance No. 165, Series of 1947, as amended, or any person not engaged in the business of transporting passengers for hire from conveying passengers to and from Stapleton Airfield by bus, taxicab, automobile or other vehicle traveling on the ground."

The ordinance otherwise provides that the manager of improvements and parks is empowered to grant to the highest and most favorable responsible bidder a revocable permit to operate a limousine service concession for the transportation of passengers for hire to and from

Stapleton Airfield and such other points as principal hotels, air line ticket offices, bus terminals and railway stations of the city, and the permittee shall establish such regular time schedules as may be required and the routes followed are to be the shortest convenient routes to and from the airfield and other points, and only one permit shall be granted and outstanding at any one time. Requirement for public liability insurance is provided. The manager of improvements and parks is authorized and directed to solicit or advertise for proposals or bids for such limousine service, which shall include the rates proposed to be charged and a proposal or bid submitted by a responsible person, which in the judgment of the council, offers fair and reasonable rates, may be accepted by the manager of improvements and parks after the adoption by the council of a resolution approving the rates proposed to be charged. After the adoption of such a resolution, the manager of improvements and parks is authorized and directed to issue a revocable permit to the person submitting the approved bid.

It is to be noted that the license or permit under this ordinance is for limited taxicab service under which *each trip for the transportation of any passenger must either originate or terminate at Stapleton Airfield.* In connection therewith the manager of improvements and parks is authorized to grant as a concession a taxicab stand at a convenient location at or near the airfield administration building, to the highest and most favorable bidder; and under section 8, Yellow Cab, or any other taxicab operator, is not prohibited from conveying passengers to and from the airport; and finally the ordinance is wholly silent as to any question of public hearings to determine the convenience or necessity. For this special limited revocable service, the manager of improvements and parks, in conjunction with the city council, has the sole discretion, without public hearing, to determine the needs of the transportation service at all times, and is wholly free to exercise his best judgment in determining

who is, or who is not, a responsible bidder, having the interests of the city as well as that of the public in mind. When such determination has been made, the provisions of the ordinance make it mandatory on the manager of safety, the general licensing authority of the city, to issue to the person or permittee a license for the limited service as provided in the ordinance. The licensee thereafter is subject to the provisions of the general taxicab ordinance No. 165, with the exception as to the number of taxicabs, duty to accept passengers and rates of fare. If the successful applicant for a permit is already a duly licensed taxicab operator under ordinance No. 165, then the manager of safety is given no other authority under this ordinance except to participate with the manager of improvements and parks in the determination of the number of taxicabs which may be operated under this limited taxicab service. After the permit has been issued on the direction of the manager of improvements and parks under this ordinance, the permittee is then subject to the safety regulations the same as all general taxicab operators, and for that purpose, under the supervision and control of the department of the manager of safety.

As between the city and general taxicab operators licensed under Ordinance No. 165, the airport may be controlled by the city in every legal sense as a private owner. The taxicab operators are not a part of the using public that the city is committed to serve. Their interests are pecuniary and self-serving.

In September, 1929, sixteen years before the legislature enacted section 242 of Article 7, chapter 45, '35 C.S.A., 1949 Cumulative Supplement, declaring the operation of publicly owned airport facilities to be governmental function, the city by Ordinance No. 128, established the Municipal Airport of the City and County of Denver and provided for its control and management by the department of improvements and parks as a terminal facility of the City and County of Denver for the development, promotion and accommodation of air commerce

and aerial navigation. In this matter it would seem that the city in voluntarily assuming a power and exercising a function for the benefit of the municipality and extending aid toward the promotion and accommodation of air commerce and travel, did so in its municipal or proprietary capacity as distinguished from a governmental function assigned to it to enforce the general policy of the state in the administration of general laws. However, if the operation of the municipal airport by the city of Denver is in keeping with the declared policy of the legislature to be a governmental function, then the power of the city to act for the purpose of the promotion and convenience of travel by air is further amplified instead of restricted.

When the city established the airport and by declaration of its city council placed the management thereof in the department of improvements and parks, there was, and is, an implied grant of power to the manager of the department of improvements and parks to have contractual powers to grant among other things a taxicab concession at the airport and control the limousine or taxicab operations incident thereto without ordinance authority. However, in the instance of the matter before us, the action of the manager of improvements and parks is fortified by the direction, as well as the approval, of the city council. This determination might well terminate this litigation and set at rest all claims of Yellow Cab, because in the final analysis the gist of this controversy is that Yellow Cab submitted a low bid for the concession and the exclusive limited limousine and taxicab operations to and from the airport, and lost a concession that it had enjoyed for many years without any legal prescriptive right to continue.

Other points specified and ably discussed by all parties hereto do not now require lengthy discussion, but, with due regard for the painstaking presentation by counsel, we will summarily determine these points.

Without saying that Yellow Cab is estopped from

asserting its claim for injunctive relief, we are persuaded to say that its position therein, if not questionable, is lacking in good grace. It complained that the title to Ordinance No. 19 was insufficient and too narrow. Our answer is that it was broad enough and sufficient for it to voluntarily seek a benefit thereunder, and no doubt had it been successful, it would not now be here asserting the invalidity of an ordinance under which it received and enjoyed beneficial rights. Yellow Cab contends that it was the only bidder who was responsible and able to perform the service required at the airport, and indirectly argues that its bid should have been accepted. This is tantamount to an acceptance of not only the title to the ordinance, but the terms thereof as well.

 Yellow Cab's contention that in this matter it had a legal right to insist that it be permitted to maintain the cab stand at the airport on city property for its own benefit is without merit. Its license to operate upon the streets of the City and County of Denver is not hereby restricted or interfered with and under such license it has no legal call upon any portion of any business regardless of where it might originate or terminate, much less the right to demand that it had the exclusive right to the transportation of passengers whose trip either originates or terminates at the airport, and more particularly, no right that it can legally assert to so operate exclusively upon the roadways of the airport which are outside of the streets of the City of Denver and are on the municipally owned property operated for the general use, convenience and benefit of airline travelers; hence it has no property right to do business at the airport and no legal right to object to the granting to another, under the circumstances, of an exclusive privilege for that purpose.

 Contrary to the contention of Yellow Cab, we find and determine that the operation of airport transit under its revocable permit as issued under and in compliance with ordinance No. 19, Series of 1949 of the City and

County of Denver, is lawful in every respect and therefore the claim of Yellow Cab that its operations were, and are, injuriously interfered with by the operations of an unlawful competitor is without merit.

In conclusion we say that our study of the two ordinances involved discloses that both "are operative and effective; are subject to harmonious compliance; and, as we view it, not subject to any conflict. Ordinance No. 19 on its face shows that it is special in nature and clearly distinct from Ordinance No. 165, the general taxicab ordinance. Operations under Ordinance No. 19 are confined strictly to the taxicab stand concession and the incidental limousine or taxicab service to and from the airport, which is wholly without the scope of the general taxicab ordinance and does not conflict therewith. The general ordinance deals with master licenses and general and promiscuous taxicab service originating upon the streets of the City of Denver. The special ordinance, No. 19, deals with a limited taxicab operation, revocable at any time if in the judgment of the manager of improvements and parks, public interest is involved. We are confident that such is a plausible construction of the two ordinances and this court has recently held, that construction which would lead to palpably absurd results, is forbidden. *Mahood v. Denver*, 118 Colo. 338, 195 P. (2d) 379; *Kirschwing v. O'Donnell*, 120 Colo. 125, 207 P. (2d) 819.

As to the second phase of this litigation included in case No. 16388, one of two consolidated cases here, we see no reason to disturb the judgment carefully and painstakingly considered and entered by the able district judge who heard and determined all the facts presented on the counterclaim. We do not substitute our judgment which, if we transgressed to do so, would displace a better one. Following the views herein expressed, it could not successfully be contended Airport Transit would not have a just claim for injury for the suspension of its lawfully authorized business by Yellow Cab. The rea-

sonable elements and items entering into the judgment are founded on unquestionable grounds.

The judgments of the trial court, based upon its clearly and ably expressed findings, are right in both of the consolidated cases and are, therefore, affirmed.

Mr. Justice Stone and Mr. Justice Clark not participating.