ROSA WORLEY HARRELSON AND C. O. HARRELSON, D/B/A MRS. R. L.
    HARRELSON & COMPANY, v. CITY OF FAYETTEVILLE. .

(Filed 24 July, 1967.)   .

**1. Appeal and Error § 5—**

    The Supreme Court, in the exercise of its supervisory jurisdiction, may
determine an appeal on its merits when decision affects the public in-
terest, notwithstanding the appeal might be dismissed on procedural
grounds.

**2. Municipal Corporations § 24—**

    Ordinances of municipal corporations may be enacted in the exercise
of the police power and thus be penal in nature, or in the exercise of
proprietary powers and be in the nature of a franchise or contract.

**3. Municipal Corporations § 31.1;   Aviation § 1—**

    A municipality has authority to grant a franchise authorizing the car-
riage of passengers to and from the municipal airport and authorizing
such carrier to enter upon the boundaries of the airport property in the
performance of such service, since such authority is necessarily implied
from the express statutory powers granted municipalities in regard to air-
ports. G.S. 160-1, G.S. 63-2, G.S. 63-49(a), G.S. 63-50, G.S. 63-53.

**4. Same—**
                   .  .

    A municipal corporation has the power to stipulate that a franchise for
the carriage of passengers to and from an airport, with authority to enter
within the boundaries of the airport property in the performance of the
service, should be exclusive, notwithstanding the Utilities Commission had
theretofore granted a franchise to a common carrier to operate to the
boundaries of the airport, there being a provision in the ordinance that
if such exclusive operation should require approval or authority of any
other governmental agency. it should be the duty of the franchise holder
to obtain such approval or authority, G.S. 62-260(a).

APPEAL by defendant from *Clark, Special Judge,* February 27,
1967 Civil Session of CUMBERLAND.

    Civil action to declare void a resolution adopted December 29,
1966, and a *proposed* franchise ordinance referred to in said resolu-
tion, and to enjoin defendant from advertising for bids for such *pro-
posed* franchise ordinance and from granting such franchise.

    A temporary restraining order was in effect until the final hear-
ing at February 27, 1967 Civil Session, at which time the parties,
waiving jury trial, agreed that the presiding judge should find the
facts and enter his conclusions of law and judgment thereon.

    The record contains no evidence except admissions in the plead-
ings and certain stipulated facts. Defendant does not except to any
of the findings of fact set forth in the judgment.

    The judgment, after preliminary recitals, provides:

    ". . . and the Court having found the following facts:

"1)   Plaintiffs are residents of Cumberland County, North Carolina, doing business as a partnership under the trade name of 'Mrs. R. L. Harrelson & Company.'

"2)   Defendant is a duly created North Carolina municipal corporation owning and, through its duly constituted Fayetteville Airport Commission, operating a municipal airport, named Grannis Field, located about five miles south of defendant's city limits.

"3)   On 30 November 1965 the North Carolina Utilities Commission issued to plaintiffs Passenger Common Carrier Certificate No. B-207, printed certificate portion of which is attached to plaintiffs' Complaint. The passenger common carrier authority set out in this Certificate was:

" 'Docket No. B-207.   PASSENGER COMMON CARRIER AUTHORITY. From the intersection of U. S. Highway 301 and Southern Avenue at the intersection of Powell Street, city of Fayetteville, over U. S. Highway 301 at the intersection of the Airport Road, with closed doors; from the intersection of U. S. Highway 301 and the Airport Road to the Airport with open doors, unrestricted. Reference: Docket No. B-23.'

"4)   Since about November, 1965, plaintiffs have been conducting an airport passenger and luggage limousine service between Grannis Field and other points in Cumberland County, in and outside defendant's city limits.

"5)   Plaintiffs have never held any license, franchise, certificate or other explicit authority from defendant for such business, but have been conducting same with the knowledge of defendant.

"6)   Plaintiffs have several thousands of dollars invested in buses and other equipment used for the conducting of said business.

"7)   On December 29, 1966, defendant, through its governing City Council, duly adopted a Resolution pursuant to which defendant, following public sealed bids, proposes to advertise for award a franchise for the furnishing of airport passenger and luggage limousine service to and from Grannis Field. A true copy of this Resolution, proposed form of franchise embodied in an Ordinance, form for Advertisement for Bids, Bid Form, and Notice of Meetings of the City Council at which passage of the Franchise Ordinance were to be heard for adoption and award are attached to plaintiffs' Complaint and form a part of the record of this case.

"8)   Such Franchise Ordinance provides, and the effect of such Ordinance would be, that no person to whom such a franchise had not been awarded could go upon Grannis Field for the purpose of engaging in such airport limousine business. It further provides for regulation by defendant of fares; routes; the number, times and places of pickup and delivery at Grannis Field, on property of the

United States at Fort Bragg, North Carolina, and at other possible points; safety, insurance, and equipment standards; formula for amount of rental to be paid to defendant City by the franchisee; and for other operating controls by defendant over franchisee.

"9)  Plaintiffs have a property right in their said business and in said North Carolina Utilities Commission Certificate. If, for any reason, plaintiffs could not continue said business in its present status and extent, plaintiffs would be substantially damaged, the extent of which is not ascertainable.

"10)  That an actual controversy exists between plaintiffs and defendant and this Court has jurisdiction of the parties and jurisdiction of the subject matter under Article 26, Chapter 1 (1-253, et seq.) of the General Statutes of North Carolina.

"And the Court, after considering the pleadings of record in this matter, the stipulations of parties and counsel, the arguments of counsel, and, after having found the foregoing facts, the Court is of the opinion that the Ordinance in question is void and of no legal effect for that it exceeds the authority of the City of Fayetteville, either express or implied;

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Ordinance in question exceeds the authority of the defendant City of Fayetteville, either express or implied, and that said Ordinance be, and the same is hereby declared to be void and of no legal effect. The costs of this action are taxed against the defendant."

Defendant excepted "to the rendering and signing of the foregoing judgment" and appealed.

*Quillin, Russ, Worth & McLeod for plaintiff appellees.*
*Harry B. Stein and Tally, Tally & Lewis for defendant appellant.*

BOBBITT, J.  The *proposed* franchise ordinance was adjudged void solely on the ground "it exceeds the authority of the City of Fayetteville, either express or implied." This is the ground on which it was attacked by plaintiffs. It was not challenged as unconstitutional in any respect.

The City Council has not adopted any franchise ordinance. In the resolution adopted December 29, 1966, it set forth its finding "that there is a real need for, and that the public interests and convenience require, an Airport limousine service between the Fayetteville Municipal Airport (Grannis Field) and the City of Fayetteville and any and all other terminal points to which the using public requests the service." The resolution provides for advertisement for sealed bids for a proposed franchise for the furnishing of such air-

port passenger and luggage limousine service. It approves a form of advertisement providing: (1) That "(t)he terms and conditions of such franchise limousine service shall be as fully set out in a draft of a franchise ordinance copy of which may be obtained at said City Manager's office"; and (2) that "(t)he City reserves the right to 1) award the franchise upon the several bases of amount of rental bid, quality and extent of equipment and service proposed and financial and other responsibility, and 2) reject any or all bids." The resolution also prescribed the form for submission of bids, providing in part: "The undersigned bids, as to franchise rental, the greater of: 1) $............................ per rent year, or 2) ............% of gross receipts or income of such business."

The provisions of the proposed franchise ordinance are summarized in the court's findings of fact.

Consideration of plaintiffs' status is appropriate. The certificate issued to them by the North Carolina Utilities Commission purports to confer common carrier authority along a specified route *to* the Airport. It does not purport to confer authority for operation within the boundaries of defendant's airport property. Understandably, plaintiffs prefer to *continue* to operate *within* the boundaries of defendant's airport property without restriction, regulation or payment of rental.

Plaintiffs do not allege they intend to bid for the proposed franchise. Rather, they assert they apprehend if they should bid, successfully or unsuccessfully, they might thereby become estopped to challenge the validity of the proposed franchise ordinance. Except as stated below, they do not attack specific provisions of the proposed franchise ordinance, but assert generally that defendant lacks authority to enact *such* an ordinance. They do assert "that said Resolution and Ordinance also provides for the defendant to prohibit any person, firm or corporation from going upon Grannis Field for the pickup or delivery of passengers and baggage unless such person, firm or corporation shall have obtained a 'franchise' from the defendant municipal corporation."

Defendant having raised no question with reference thereto, we pass, without decision, the doubtful question as to whether plaintiffs' status entitles them to maintain this action. Since the public is affected, particularly the patrons of the airlines and airport facilities, we deem it appropriate to consider these questions: (1) Whether defendant has legislative authority to grant a franchise or enter into a contract on terms similar to those set forth in the proposed franchise ordinance, and (2) whether an *exclusive* franchise or contract for the proposed airport limousine service may be granted or made.

Statutory provisions pertinent to the authority of defendant to

enact a franchise ordinance *such* as that proposed include those set out below.

G.S. Chapter 160 is entitled "Municipal Corporations." In Article 1, entitled "General Powers," it is provided: "Every incorporated city or town is a body politic and corporate, and shall have the powers prescribed by statute, and those necessarily implied by law, and no other." G.S. 160-1. In considering this statute, this Court has held: "It is an established rule that a municipal corporation is authorized by implication to do an act if the doing of such act is necessarily or fairly implied in or incident to the powers expressly granted, or is essential to the accomplishment of the declared objects and purposes of the corporation." *Green v. Kitchin*, 229 N.C. 450, 453-454, 50 S.E. 2d 545, 547, and cases cited; 37 Am. Jur., Municipal Corporations § 112; 62 C.J.S., Municipal Corporations § 117a.

G.S. Chapter 63 is entitled "Aeronautics." Article 1 thereof, entitled "Municipal Airports," consisting of G.S. 63-1 through G.S. 63-9, is a codification of the statute enacted as Chapter 87, Public Laws of 1929. G.S. 63-2 provides: "The governing body of any city or town in this State is hereby authorized to acquire, establish, construct, own, *control,* lease, equip, improve, *maintain, operate,* and *regulate* airports or landing fields for the use of airplanes and other aircraft, either *within* or *without* the limits of such cities and towns and may use for such purpose or purposes any property suitable therefor that is now or may at any time hereafter be owned or controlled by such city or town." (Our italics.)

Article 6 of Chapter 63, entitled "Public Airports and Related Facilities," consisting of G.S. 63-48 through G.S. 63-58, is a codification of the statute enacted as Chapter 490 of the Session Laws of 1945 and amendments thereto. One purpose of the 1945 Act, as declared in the caption thereof, was "to make uniform the law with reference to public airports."

G.S. 63-49(a), in pertinent part, provides: "Every municipality is hereby authorized, through its governing body, to acquire property, real or personal, for the purpose of establishing, constructing, and enlarging airports and other air navigation facilities and to acquire, establish, construct, enlarge, improve, *maintain,* equip, *operate,* and *regulate* such airports and other air navigation facilities and structures and *other property incidental to their operation,* either *within* or *without* the territorial limits of such municipality and within or without this State; to make, prior to any such acquisition, investigations, surveys, and plans; to construct, install, and maintain airport facilities for the servicing of aircraft and *for the comfort and accommodation of air travelers;* and to purchase and

sell equipment and supplies as an incident to the operation of its airport properties." (Our italics.)

G.S. 63-50 provides, in pertinent part, that "the acquisition, establishment, construction, enlargement, improvement, *maintenance,* equipment and *operation* of airports and other air navigation facilities, and the exercise of any other powers herein granted to municipalities, are hereby declared to be public, governmental and municipal functions . . ." (Our italics.)

G.S. 63-53 provides that, *"(i)n addition* to the general powers in this article conferred, and *without limitation thereof,"* a municipality is specifically authorized, as provided in subsection (3), *inter alia,* "to confer the privileges of concessions of supplying upon its airports goods, commodities, things, *services* and *facilities;* provided that in each case in so doing the public is not deprived of its rightful, equal, and uniform use thereof." (Our italics.) Subsection (6) authorizes a municipality "(t)o exercise all powers necessarily incidental to the exercise of the general and special powers herein created."

G.S. Chapter 62 is entitled "Public Utilities." Article 12 thereof, entitled "Motor Carriers," consists of G.S. 62-259 through G.S. 62-279. G.S. 62-260(a) in pertinent part provides: "Nothing in this chapter shall be construed to include persons and vehicles engaged in one or more of the following services by motor vehicle if not engaged at the time in the transportation of other passengers or other property by motor vehicle for compensation: . . . (4) Transportation of passengers to and from airports and passenger airline terminals when such transportation is incidental to transportation by aircraft."

"The ordinances of a city are of a dual nature. They may be in effect local laws, or they may constitute contracts. The grant of a franchise to a street car company, and its acceptance of the same, constitute a contract." *State of Washington v. Seattle & R. V. Ry. Co.,* 1 F. 2d 605. Accord: *City of Brunswick v. Myers,* 357 Mo. 461, 209 S.W. 2d 134; *Kansas City Power & Light Co. v. Town of Carrollton,* 346 Mo. 802, 142 S.W. 2d 849; *Yellow Cab Co. v. City of Chicago,* 396 Ill. 388, 71 N.E. 2d 652.

McQuillin, in his classification of ordinances, refers to "ordinances granting franchises, special privileges, etc., which may be termed franchise or contract ordinances." 5 McQuillin, Municipal Corporations § 15.10 (3d ed.).

The provisions of the proposed franchise ordinance are contractual, not penal. They purport to provide for and regulate limousine service on Fayetteville's airport property and between a designated

area on its airport property and Fayetteville and also between a designated area on its airport property and Fort Bragg.

Our decisions establish: The construction, maintenance and operation of a municipal airport is not a necessary expense within the meaning of Article VII, Section 7, of the Constitution of North Carolina. *Sing v. Charlotte,* 213 N.C. 60, 195 S.E. 271. It is for *a public purpose, Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211; *Reidsville v. Slade,* 224 N.C. 48, 29 S.E. 2d 215; *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803; *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371, reh. den., 230 N.C. 759, 53 S.E. 2d 313. This Court held in *Rhodes v. Asheville, supra,* that the construction, maintenance and operation by a municipality of an airport is *a proprietary function,* as distinguished from a governmental function; hence, the municipality may be held liable in tort for the negligent operation thereof. Accord: 8 Am. Jur. 2d, Aviation § 58; Annotation, 66 A.L.R. 2d 634, 636.

Decision in each of the following cases is based in part on the ground that the municipality, in making a contract or granting a franchise for limousine service at a municipal airport, was acting in a proprietary capacity. *Miami Beach Airline Service v. Crandon,* 159 Fla. 504, 32 So. 2d 153, 172 A.L.R. 1425; *North American Co. v. Bird,* 61 So. 2d 198 (Fla.); *Ex Parte Houston,* 93 Okla. Crim. 26, 224 P. 2d 281; *Stone v. Police Jury of Parish of Calcasieu,* 226 La. 943, 77 So. 2d 544; *Oakland v. Burns,* 46 Cal. 2d 401, 296 P. 2d 333.

This statement from the opinion of Terrell, J., in *Miami Beach Airline Service v. Crandon, supra,* is pertinent: "When given authority to do so a governmental entity is expected to perform a proprietary function under like rules and regulations as those pursued by private individuals. No one would contend that a private or a public service corporation would be barred from entering into an exclusive contract like that involved here if the necessities of its business required. When county commissioners are clothed with a proprietary function wherein they are responsible to the public for prompt and efficient service, it necessarily follows that they must be clothed with power to enable them to meet such requirements and we think the act in question does this."

*In Ex Parte Houston, supra,* after reviewing relevant Oklahoma statutes, the court, in opinion by Powell, J., said: "Here the City of Oklahoma City was acting in a proprietary capacity as distinguished from a governmental capacity. This fact is the key to the solution of this case. (Citations). And from the facts heretofore recited, we find that it owned and was operating the municipal airport terminal under authority of the Uniform Airport Act, supra, and under such

authority obligated itself contractually with the various airlines using the airport terminal facilities, to perform certain usual, necessary and incidental services therewith connected. An airport terminal exists for the purpose of handling passengers arriving and departing by air line, and the Will Rogers Municipal Airport being approximately eight miles southwest of downtown Oklahoma City, the transportation of passengers to and from the airport to Oklahoma City and looking after their comfort, safety and convenience is the primary responsibility of Oklahoma City as owner and operator of said terminal. To us it appears reasonable that the power to acquire and operate a proprietary function implies all necessary power to operate it efficiently."

In our opinion, and we so decide, our statutory provisions, quoted above, authorize defendant to award a contract granting to the franchisee the right to provide limousine service upon terms and conditions such as those set forth in the proposed franchise ordinance.

The court found as a fact that "(s)uch Franchise Ordinance provides, and the effect of such Ordinance would be, that no person to whom such a franchise had not been awarded could go upon Grannis Field for the purpose of engaging in such airport limousine business." Assuming defendant's authority to grant a franchise as indicated, whether it should grant an exclusive franchise or nonexclusive franchises is a matter for determination by its City Council in the exercise of its discretion and judgment.

In Rhyne, Municipal Law § 22-16, it is stated: "The courts have unanimously upheld the power of a municipal corporation or operator of a publicly owned airport to grant an exclusive right to one company to furnish taxicab, limousine or airline bus service at its airport on the ground that this is the only way a city can carry out its duty to see that adequate, safe, orderly and reliable ground transportation is provided to airline passengers at all times." This statement is fully supported by each of the following cases: *Miami Beach Airline Service v. Crandon, supra; North American Co. v. Bird, supra; Ex Parte Houston, supra; Stone v. Police Jury of Parish of Calcasieu, supra; Oakland v. Burns, supra; Rocky Mountain Motor Co. v. Airport Transit Co.,* 124 Colo. 147, 235 P. 2d 580; *Associated Cab Co. v. Atlanta,* 204 Ga. 591, 50 S.E. 2d 601; *Hertz Drive-Ur-Self System v. Tucson Airport Auth.,* 81 Ariz. 80, 299 P. 2d 1071.

In 8 Am. Jur. 2d, Aviation § 56, this statement, based on decisions cited above and others, appears: "It has been consistently held that a governmental body or authority, as owner and operator of a public airport, can lawfully and properly grant an exclusive taxicab or limousine or car-rental concession at the airport." Also,

see Annotation, "Validity, construction, and operation of airport operator's grant of exclusive or discriminatory privilege or concession," 40 A.L.R. 2d 1060.

The proposed franchise ordinance contains the following provision: "If any route, condition of service or other aspect of Franchisee's operation or business shall require approval or authority of or from any person, agency, or governmental or other authority than the City, it shall be Franchisee's responsibility, alone, to obtain same, and provide proof of such authority to City before commencing operations under this franchise."

As indicated, no specific provision of the proposed franchise ordinance, except that granting exclusive rights to the franchisee, was challenged by plaintiffs. Decision on this appeal is that a franchise ordinance of the nature of that proposed does not exceed the authority of the City of Fayetteville. For this reason, the judgment of the court below is reversed; and, upon certification of this opinion, the court will enter judgment dismissing the action and taxing plaintiffs with the costs.

Reversed.