RALEIGH-DURHAM AIRPORT AUTHORITY v. GEORGE STEWART
AND CLYDE LEASING, INC., TRADING AND DOING BUSINESS AS
BUDGET RENT-A-CAR

No. 7010SC552

(Filed 21 October 1970)

Aviation § 1; Carriers §§ 2, 13— airport authority — control of airport
premises — right of car rental firm to pick up passengers

An airport authority cannot exclude an automobile rental firm
from coming upon the airport property for the sole purpose of picking
up or delivering airline passengers pursuant to the specific request of
the passengers, who are lessees of the firm, since the personal right of
the passengers to select their own means of transportation to and
from the airport is paramount to the right of the airport authority to
grant an exclusive franchise to passenger carriers.

APPEAL by defendants from *Bailey, Judge* of Superior
Court, June 8, 1970 Civil Session, WAKE Superior Court.

Plaintiff (Airport Authority) filed a complaint against the
defendants (Budget) seeking injunctive relief and monetary
damages for an alleged continuing trespass by Budget upon the
property of Airport Authority. Airport Authority is a municipal
corporation chartered by Public Local Laws of 1939, Chapter
168.

The basic facts were stipulated and are summarized as
follows:

Airport Authority has the power and authority to supervise
and administer the Airport premises which are owned by the
City of Raleigh, the City of Durham, the County of Wake, and
the County of Durham. The land, upon which the terminal build-
ing, parking areas, airplane landing areas and approaches to the
premises are situated, was all purchased with public funds
derived from other than tax sources and from funds derived from
the operation of the several concessions and businesses operated
thereon. The Airport Authority has contracted with three com-
panies and authorized them to engage in the business of renting
automobiles for hire at the airport in return for a guaranteed
annual amount, plus a percentage of the gross receipts from the
rentals. Each of these companies rents space from the airport for
the storage of automobiles and for loading and unloading pas-
sengers and baggage in and from the cars rented by them. None

of these companies use the loading and unloading facilities at the airport, but are required to use other specified areas. Each of these companies maintains space for soliciting business from the public using the airport facilities.

Budget leases automobiles to individuals for a base rental fee, plus a mileage charge. It is part of a national organization operating locally on a franchise basis. It maintains a rental operation in Charlotte, Greensboro, Fayetteville and Raleigh-Durham and rents automobiles to anyone meeting its standards, which includes an acceptable driver, license, and financial responsibility. It maintains its headquarters on a tract of land located on a public road on the perimeter of the airport premises and stores on this land the cars to be rented in the Raleigh-Durham area. Budget has been leasing automobiles from this location since the Fall of 1968 and is not affiliated with or under contract to any airline. The contract of rental with Budget is evidenced by a written instrument signed by the lessee or by the exhibition of an approved credit authorization. The contract is consummated by a number of ways: (1) The lessee may appear in person at the place of business of Budget, sign several documents and accept delivery of the leased automobile; (2) The lessee may call from a public telephone from the airport for an automobile; Budget, upon receipt of the call, sends an employee with an automobile to the airport terminal, locates the prospective lessee and takes him to Budget's place of business to sign the necessary documents; (3) The lessee may make arrangements prior to arrival at the airport in which event the procedure for completing the lease documents is identical to the procedure in (2). At the termination of the lease, the lessee returns the car to Budget, and is then transported to the terminal by an employee of Budget. The transportation of the lessee to and from the terminal and premises of Budget is usually accomplished in the automobile which is the subject of the lease. Occasionally, an automobile will be left in the vicinity of the terminal to be picked up by an employee of Budget. In carrying out the above arrangements, Budget uses the driveways, waiting areas and parking facilities provided for passenger use at the terminal. Budget has no contract or authorization from the Airport Authority to use its facilities, and in fact has been specifically forbidden to do so. Budget advertises its business in news media and signs which are located off the Airport Authority premises.

The trial judge made findings of fact basically similar to those set forth above and specifically "[t]hat the roadways, park-

ing areas, loading areas, and Terminal Building at the Raleigh-Durham Airport were constructed and are maintained by the Raleigh-Durham Airport Authority for the use of travelers using the Airport and persons having business with the Airport Authority, its licensees and concessionaries, and their use is not authorized for the operation of any private business not authorized by the Authority."

The trial court concluded as a matter of law that the action of Budget "constitutes a continuing trespass on the property of the Raleigh-Durham Airport and a continuing use of the property of the Airport for its private business purposes without its permission and in defiance of its notice to the contrary." The trial court thereupon permanently enjoined Budget and hence this appeal.

*Purrington & Purrington by A. L. Purrington, Jr., for plaintiff appellee.*

*Tally, Tally and Bouknight by J. O. Tally, Jr., and J. A. Bouknight, Jr., for defendants appellants.*

CAMPBELL, Judge.

This appeal presents a problem of first impression in this jurisdiction. It is therefore deemed appropriate to review the historical background and decisions from other jurisdictions.

In earlier days and with other modes of public transportation, similar problems were incurred. Hack drivers and baggage transfer companies vied with each other for passenger patronage at railroad terminals and similar facilities used by the traveling public. Frequently, this resulted in such confusion and annoyance to travelers that some limitation on free enterprise was thought desirable. Even so, a strong minority took the view that it was against public policy to infringe on free enterprise in any way. The majority view, however, was to the effect that it was not against public policy to grant an exclusive franchise. The leading case, *Black and White T. & T. Co. v. Brown and Yellow T. & T. Co.,* 276 U.S. 518, 48 S.C. 2d 404, 72 L. Ed. 681, 57 A.L.R. 426 (1928) reveals the conflicting views. In that case a railroad operating a large city railroad passenger terminal gave an exclusive franchise to one taxicab company to serve the station. Another taxicab operator sought to declare the franchise invalid. Mr. Justice Butler, in writing the majority opinion, stated:

". . . The privilege granted to respondent does not impair the railroad company's service to the public or infringe any right of other taxicab men to transport passengers to and from the station. While it gives the respondent advantage in getting business, passengers are free to engage anyone who may be ready to serve them. The carrying out of such contracts generally makes for good order at railway stations, prevents annoyance, serves convenience and promotes safety of passengers. . . ."

It is thus seen that this position does not prevent other taxicab companies from coming onto and off the premises. They are only prohibited from soliciting business on the premises.

In *Skaggs v. Kansas City Terminal Ry. Co.*, 233 F. 827 (1916), the Federal District Court for the Western District for Missouri upheld an exclusive franchise to certain hacks to serve the Union Terminal. In sustaining the exclusive franchise, the court called attention to the fact that

". . . Adequate provision is made in the contract for all the needs of the traveling public in this regard. Manifestly, out-going passengers are in no wise affected, because plaintiffs and others have the conceded right to enter upon the premises of the Terminal Company for the purpose of actual delivery of passengers and baggage. They also have the right to receive passengers and baggage for whose transportation they shall have already received orders. The freedom of all parties to take their stands upon appropriate public places outside the limits of the premises of defendant Terminal Company affords to the public generally, including all incoming passengers, every opportunity to avail itself of their services, should it so desire. . . ."

Thus, again, the court recognized the right of members of the traveling public to select their own mode of conveyance.

In *Mader v. Topeka*, 106 Kan. 867, 189 P. 969, 15 A.L.R. 340 (1920), a city ordinance prohibiting taxicabs from creating a stand on a street unless the abutting property owner had given consent for such a stand was held valid with the court pointing out:

". . . It will be observed that this consent is not required for the purpose of passing over the streets, nor for stopping to discharge a passenger or to take on a passenger; it for-

bids the establishment of a hackstand by the proprietor of a taxicab or hack in any portion of a public street without first obtaining the written consent of the abutting owner. . . ."

Likewise, in the case of *Thompson's Express & Storage Co. v. Mount*, 91 N.J. Eq. 497, 111 A. 173, 15 A.L.R. 351 (1920), an exclusive franchise given by a railroad to one cab company was held valid, and other cab companies could not complain, the court saying:

". . . No right of a passenger is here infringed, since it is entirely open to passengers to employ any cabmen they wish. The injunction only prohibits soliciting on the station platform. . . ."

In the case of *Miami Beach Airline Service v. Crandon*, 159 Fla. 504, 32 So. 2d 153, 172 A.L.R. 1425 (1947), the Dade County Port Authority, which had control of the Miami International Airport, granted an exclusive concession to a limousine operator. A bus operator sought to compete with the limousine operator by offering service to and from the airport terminal. The Authority sought and obtained a restraining order restraining the bus operator from soliciting passengers for hire within the public airport premises and from loading passengers for hire on its buses on such premises and thus prohibited the bus operator from even entering the airport premises. This case, however, is not authority for prohibiting a for-hire vehicle entering the premises of the Airport Authority in answer to a specific request by a member of the traveling public using the airport terminal facilities. This case is only authority for the right of the Airport Authority to grant an exclusive franchise and prohibit competitors from soliciting business at the airport terminal. To like effect, see *North American Co. v. Bird*, 61 So. 2d 198, (Fla. 1952).

In *Rocky Mountain Motor Co. v Airport Transit Co.*, 124 Colo. 147, 235 P. 2d 580 (1951), an ordinance of the City of Denver granting an exclusive franchise to one taxicab company to serve the airport premises was sustained, but the court pointed out that the ordinance itself provided that any other taxicab company could convey passengers to and from the airport so that the rights of passengers would not be infringed. To like effect, see *Patton v. Administrator of Civil Aeronautics*, 217 F. 2d 395

(1954) ; *Friend v. Lee,* 221 F. 2d 96 (1955) ; *U. S. v. Jenkins,* 130 F. Supp. 808 (1955).

It is thus seen that there has developed a split of authority with regard to granting an exclusive franchise to one or a few taxicab companies to handle the business of passengers patronizing the terminal of a carrier. The majority of the jurisdictions considering the matter have sustained the right of granting an exclusive franchise, but even those jurisdictions have not prohibited a member of the traveling public from selecting someone else when desired. In other words the rights of the traveling public to select a taxicab, even though such cab has no concession or franchise to operate at the terminal, are paramount to the right of the terminal owner in granting exclusive franchises.

North Carolina has considered one aspect of the matter and has followed the majority rule to the extent of recognizing the validity of an exclusive franchise. In *Harrelson v. Fayetteville,* 271 N.C. 87, 155 S.E. 2d 749 (1967), the Supreme Court of North Carolina upheld the validity of an exclusive franchise arrangement and in so doing held that this was a proprietary function and not a governmental function.

This case, however, does not hold that the personal rights of a member of the traveling public, using the facilities of the airport terminal, may be infringed upon to the extent that the Airport Authority in the instant case is attempting.

The Airport Authority can supervise and control mercantile engagements such as would require occupancy of space or use of facilities on the premises of the airport in a manner more burdensome than or otherwise different from that accorded to a member of the traveling public. The Airport Authority has no right, however, to restrict a member of the traveling public in his personal rights. A traveler in his personal rights can arrange to be met by someone of his selection to transport him to and from the airport terminal.

In the instant case Budget is doing an act in the performance of a personal right of and for a passenger, a member of the traveling public, and the Airport Authority has no right to limit or restrict this. The mere fact that the incoming passenger has not yet signed the necessary documents before getting into the automobile brought to the terminal by Budget is not sufficient to validate what the Airport Authority is attempting to accomplish in the instant case.

The case of *Griswold v. Webb*, 16 R.I. 649, 19 A. 143, 7 L.R.A. 302 (1889), is directly in point. In that case, contrary to the rules and regulations of a public wharf, a hackney carriage drove up to a place, reserved for those with a license, for the purpose of picking up a passenger coming in on the boat. The passenger had ordered this particular hackney to pick him up. The court held that while ordinarily an exclusive franchise is recognized, nevertheless,

> ". . . the company cannot deprive a passenger of the ordinary rights and privileges of a traveler, among which is the privilege of being transported from the terminus in a reasonably convenient and usual way. A company cannot compel a passenger to take one of several carriages, or none at all; nor impose unreasonable restrictions which will amount to that. If a passenger orders a carriage to take him from the terminus, such carriage is, *pro hac vice,* a private carriage; not in the sense that the passenger has a special property in it, so as to be liable for the driver's negligence, but in the sense that it is not 'standing for hire.' . . . The driver is not engaged in his vocation of soliciting patronage, but is waiting to take one with whom a contract has already been made. No question is made that a passenger may have his own carriage enter the premises of a carrier to take him away; but to say that one who is not so fortunate as to own a carriage shall not be allowed to call the one he wants, because it is a hackney carriage, would be a discrimination intolerable in this country. . . ."

In the instant case we hold that the activities of Budget in going to and from the airport terminal to pick up and discharge airplane passengers, using the terminal and the public transportation facilities served by said terminal, are activities pertaining to personal rights of the passengers and beyond the authority of the Airport Authority to control as sought in this case.

The act of picking up a passenger who has requested or reserved a rent-a-car does not involve solicitation on the airport premises. The solicitation has obviously already occurred or the passenger would not have called in the first place. Therefore, we are of the opinion and so hold that the defendant Budget cannot be excluded from the airport property when its sole pur-

pose of going on there is to pick up or deliver a passenger pursuant to the specific request of that passenger.

Reversed.

Judges BRITT and VAUGHN concur.